AMERICARE HEALTH GROUP, INC.
and Jesse S. Wade, Plaintiffs/Re-
spondents,

v.

Robert J. MELILLO,
Defendant/Appellant.

No. CV 97–6854.

United States District Court,
E.D. New York.

Aug. 3, 1998.

Robert K. Whitt, Midland, Texas, for plaintiffs/respondents.

Moritt, Hock & Hamroff, LLP, by Leslie A. Berkoff, Garden City, New York, for defendant/appellant.

### MEMORANDUM AND ORDER

WEXLER, District Judge.

By Notice of Appeal dated November 18, 1997, defendant Robert J. Melillo (variously referred to in this opinion as "Melillo", "defendant", or "debtor") seeks to invoke this Court's jurisdiction to hear appeals from the United States Bankruptcy Court for the Eastern District of New York. Melillo hopes to reverse an order of Bankruptcy Judge Stan Bernstein that denied Melillo's motion to dismiss plaintiffs' adversary proceeding, and transferred that proceeding to the United States District Court for the District of Alaska, the venue for a related case. Subsequent to the filing of the Notice of Appeal, Melillo moved for an order (1) staying the adversary proceeding and its transfer during the pendency of this appeal, (2) determining whether the bankruptcy court's order is appealable as a final order or as an interlocutory order for which leave to appeal may be granted, and (3) providing "such other and further relief as this Court may deem just and proper." It is this motion that is presently before the Court. For the reasons stated below, the Court finds that the order from which defendant seeks to appeal is not appealable either as a final order or under the collateral order doctrine, and denies defendant's motion seeking leave to appeal the order if construed as an interlocutory decree. Defendant's motion seeking a stay of the adversary proceeding and its transfer pending resolution of these potential appeals is denied as moot.

### BACKGROUND

On May 24, 1995, Jesse S. Wade sued Melillo and others in the United States District Court for the District of Alaska seeking damages sustained by them consequent to Melillo's alleged manipulation of stock in Americare Health Group, Inc. ("Americare"). On March 21, 1997, Melillo filed a Chapter 7 petition seeking bankruptcy protection in the Eastern District of New York, thus staying the Alaska action.

72

Plaintiffs were informed by the Notice of Commencement sent by the bankruptcy court, dated May 8, 1997, (the "Notice") that the § 341 creditors' meeting was scheduled for June 17, 1997, at the Office of the United States Trustee. The Notice further stated that the deadline for filing complaints objecting to discharge of the debtor or the dischargeability of certain types of debt was August 18, 1997. Defendant's attorneys assert that they advised plaintiffs' counsel that they had contacted the United States Trustee who confirmed that the § 341 meeting was scheduled for May 12, 1997. Plaintiffs attended the May 12 meeting, at which time they were informed, according to Americare's secretary/treasurer, Michael Jordan, that the Court Clerk had "messed up" the Notice for the § 341 meeting and that it would be rescheduled for another date. Plaintiffs add that, though they realized they were not attending a § 341 meeting, their representatives, being present, asked questions suitable for a § 341 meeting. Plaintiffs further assert that they were never informed that the bar date for discharge objections was other than the bar date of August 18, 1997, as stated in the court's Notice. Defendant contends that a § 341 meeting was scheduled for May 12, 1997, in fact took place on that day, and that plaintiffs were fully aware that they were participating in the scheduled § 341 meeting. Defendant further notes that, irrespective of the Notice, the bankruptcy court's docket indicated May 12, 1997 as the meeting date.

Plaintiffs filed their adversary proceeding objecting to the discharge of the debtor and the dischargeability of certain debts on August 6, 1997, well before the August 18, 1997 deadline stated in the Notice. On October 15, 1997, defendant moved to dismiss plaintiffs' adversary proceeding as untimely, alleging that plaintiffs did not file the adversary proceeding within 60 days following the creditors' meeting as provided for by Bankruptcy Rules 4004(a) and 4007(c). On or about October 24, 1997, plaintiffs served opposition to defendant's motion and cross-moved to modify the automatic stay to permit the Alaska proceedings to go forward, and to transfer the adversary proceeding to the district court in Alaska. On November 10, 1997, Judge Bernstein denied defendant's motion to dismiss, and granted both of plaintiffs' motions.

## DISCUSSION

### I. Basis of Appellate Jurisdiction

A district court's jurisdiction to review orders of the bankruptcy court is governed by 28 U.S.C. § 158(a) which states in pertinent part: "The district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees; (2) from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title; and (3) with leave of the court, from other interlocutory orders and decrees."

In support of his contention that this Court has jurisdiction to hear his appeal, Melillo argues that the bankruptcy court's order is appealable either as a final order or as an interlocutory order under the collateral order doctrine, or, as an interlocutory order from which leave to appeal should be granted because the order is effectively unreviewable as to issues of law if an immediate appeal is not granted. Appellees argue that orders changing venue and denying dismissal are merely interlocutory orders for which defendant should not be granted leave to appeal. We treat each aspect of the order separately.

### II. The Transfer Order

#### A. Final Order Rule

As a general rule, a final order is "one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945). The concept of "finality," however, is more flexible in the bankruptcy context than in ordinary civil litigation. *In re Prudential Lines, Inc.,* 59 F.3d 327, 331 (2d Cir.1995). As the Second Circuit has explained:

Immediate appeal is allowed of orders in bankruptcy matters that "finally dispose of discrete disputes within the larger case." *In re Sonnax Indus.,* 907 F.2d 1280, 1283 (2d Cir.1990) (emphasis, quotation, and ci-

tation omitted). The resolution of a "dispute" does not simply refer to the determination of a separable issue. Rather, a "dispute" in this context means at least an entire claim for which relief may be granted. *In re Fugazy,* 982 F.2d 769, 775 (2d Cir.1992).

*In re Flor,* 79 F.3d 281, 283 (2d Cir.1996). Thus, a bankruptcy court's order is not a final decision unless it necessarily resolves all of the issues pertaining to a discrete claim. *Id.; accord In re Johns–Manville Corp.,* 824 F.2d 176, 179 (2nd Cir.1987) (bankruptcy court order is final and immediately appealable "if it disposes of discrete disputes within the larger case;" internal quotation omitted).

█ Debtor's contention that the transfer order amounts to a discrete dispute for purposes of appealability is meritless. As noted above, in the bankruptcy context, a dispute means at least an entire claim on which relief may be granted. The dispute regarding transfer of the adversary proceeding and its resolution by the bankruptcy court is not one that resolves an entire claim or even part of a claim and, at most, merely changed the locus where the claim will be heard. Indeed, Judge Bernstein not only retained control of the remainder of the bankruptcy proceeding, but expressly stated that, after the District Court of Alaska had made its factual findings relevant to the claims in the adversary proceeding, he would retain jurisdiction for reviewing those findings. Hearing Transcript at 8. Under the circumstances, the transfer order resolved no claims but merely determined a separable issue. That is not enough to make it a final order.

### B. *Collateral Order Doctrine*

█ Defendant suggests that the transfer order may be considered an appealable interlocutory order under the collateral order doctrine set forth in *Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). That doctrine permits appeal from a narrow class of orders that "finally determine claims of rights separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until

the whole case is adjudicated." *Id.* at 546, 69 S.Ct. 1221. For an interlocutory order to be considered appealable under the collateral order doctrine, it must meet three requirements: (1) the order must conclusively determine the disputed question; (2) the order must resolve an important question completely separate from the merits of the action; and (3) the order must be effectively unreviewable on appeal from final judgment. *See Gulfstream v. Mayacamas Corp.,* 485 U.S. 271, 276, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988); *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978).

Although the transfer order arguably satisfies the first and second *Gulfstream* factors, it fails on the third. The transfer order could be effectively reviewed at the conclusion of the adversary proceeding. This is not a case where, as *In re Pan Am Corp.,* 16 F.3d 513 (2d Cir.1994), a further relaxation of the rule barring interlocutory review of bankruptcy orders was warranted because immediate review promoted the efficiency and fairness of the bankruptcy proceeding. *Id.* at 515. To the contrary, it is apparent that Judge Bernstein's transfer order was intended to maximize efficiency and fairness by taking advantage of the Alaskan court's familiarity with the issues pertinent to the adversary proceeding, *see* Hearing Transcript at 8, while instructing the parties to frame the issues for the Alaskan court:

> by stipulation to this Court in terms of set of instructions or requests for instructions to the Federal District Court, so that the parties don't have to litigate this issue in any sense twice before the Federal District Court in Alaska and this forum in the Bankruptcy Court in the Eastern District of New York.

*Id.* Accordingly, the transfer order is not appealable as a collateral order under *Cohen.*

### C. *Leave to Appeal as an Interlocutory Order*

█ Finally, defendant argues that leave to appeal the should be granted pursuant to Section 158(a)(3)'s provision granting district courts authority to grant leave to appeal interlocutory orders. Because Sec-

tion 158(a)(3) does not provide criteria for determining when leave to appeal should be granted, district courts have generally applied the analogous standards set forth in 28 U.S.C. § 1292(b) governing interlocutory appeals from district courts to the United States courts of appeals. *See, e.g., In re Chateaugay Corp.,* 213 B.R. 633, 636 (S.D.N.Y.1997); *Escondido Mission Village L.P. v. Best Prods. Co.,* 137 B.R. 114, 116 (S.D.N.Y.1992); *In re Johns–Manville Corp.,* 47 B.R. 957, 960 (S.D.N.Y.1985). Thus, leave to appeal from an interlocutory order will be granted only when the order at issue involves "a controlling question of law as to which there is substantial ground for difference of opinion and an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *In re Aquatic Dev. Group, Inc.,* 196 B.R. 666, 669 (N.D.N.Y.1996). The appellant must establish exceptional circumstances that justify a departure from the basic policy of postponing review until after the entry of final judgment. *See generally Coopers & Lybrand,* 437 U.S. at 475, 98 S.Ct. 2454; *see In re CIS Corp.,* 188 B.R. 873, 878 (S.D.N.Y.1995) (applying "exceptional circumstances" rule in context of bankruptcy appeal); *accord In re Ionosphere Clubs, Inc.,* 179 B.R. 24, 28 (S.D.N.Y.1995).

■ The requirements of section 1292(b) are not met. Assuming, *arguendo,* that the transfer order involves a controlling question of law (*i.e.,* a ruling which, if erroneous, would be reversible error on final appeal, *see In re Marvel Entertainment Group, Inc.,* 209 B.R. 832, 837 (D.Del.1997)), reversal of the transfer order would not materially advance the ultimate termination of the litigation. If anything, reversal would serve to delay the resolution of the adversary proceeding between these parties. Consequently, leave to appeal the transfer order is denied.

### III. *The Motion to Dismiss*

■ As for the bankruptcy court's order denying defendant's motion to dismiss, it is not a final order because the denial of a motion to dismiss does not end the litigation on the merits. Indeed, it is well settled that denial of a motion to dismiss a complaint in an adversary proceeding is an interlocutory order. *See, e.g., In re Aquatic Dev. Group,* 196 B.R. at 669. Nor is it an appealable interlocutory order under the collateral order doctrine because the order may be reviewed on appeal from any judgment adverse to defendant.

■ Leave to appeal the order denying dismissal is denied. The subject order meets two of the three grounds for an appealable interlocutory order inasmuch as it involves a controlling question of law and reversal would materially advance the ultimate termination of the litigation by ending plaintiffs' adversary proceeding. Nevertheless, the question of law raised by the order is not one as to which there is a substantial ground for difference of opinion.

Federal Rule of Bankruptcy Procedure 4004(a) sets a deadline for filing objections to discharge in chapter 7 cases. That deadline is set at 60 days after the first day set for a meeting of creditors held pursuant to § 341. Bankruptcy Rule 4004(a). Defendant correctly notes that under Rules 4004 and 4007, the time limits for filing a complaint objecting to dischargeability may not be extended except where the party seeking to file outside the deadline makes an application for an extension of time before the deadline expires. Defendant adds that the time for taking action under Rules 4004 and 4007 may only be enlarged as provided for in those rules. *See* Bankruptcy Rule 9006(b)(3). The effect of these rules, taken together, prevents a bankruptcy court from, *sua sponte,* extending the 60-day deadline.[1]

---

1. Defendant also points to a line of cases holding that mere knowledge of an ongoing bankruptcy proceeding suffices to start the clock on the period for filing objections, even if no notice is received from the bankruptcy court regarding a deadline for filing a complaint objecting to discharge. *See, e.g., In re Compton,* 891 F.2d 1180, 1184 (5th Cir.1990); *In re Walker,* 927 F.2d 1138, 1145 (10th Cir.1991). These cases are inapposite, however, because they do not deal with the problem before the Court, namely, the effect that a misleading (as opposed to absent) bankruptcy court notice has on extending the filing deadline.

On the facts of this case, the strictures imposed by Rules 4004, 4007, and 9006(b)(3) are not controlling. The bankruptcy court did not act *sua sponte* to extend the filing deadline. Rather, it acted to correct its own mistake of providing the parties with the wrong § 341 meeting date and the wrong bar date. A bankruptcy court may properly exercise its equitable powers to accept a late-filed objection to discharge where, as here, the court itself has given an incorrect notice of the deadline upon which the late filer could reasonably have relied. *See, e.g., In re Isaacman*, 26 F.3d 629, 632 (6th Cir.1994) (noting that "parties are entitled to rely on information issued by bankruptcy courts"); *In re Themy*, 6 F.3d 688, 689 (10th Cir.1993); *In re Anwiler*, 958 F.2d 925, 927–29 (9th Cir.1992); *see also In re Benedict*, 90 F.3d 50, 54 (2d Cir.1996) (holding that the time period is not jurisdictional and may be extended by the court when equity so requires, and citing *Themy* and *Anwiler* with approval as standing for the proposition that an extension of the time period may be allowed "when the creditor was affirmatively misled by the bankruptcy court as to the filing deadline."). There is not a substantial difference of opinion as to the legal standard applicable to these facts.

In ruling from the bench, Judge Bernstein expressly and correctly relied upon the reasoning in *Isaacman, Themy,* and *Anwiler*, noting additionally that, under *Benedict,* "the sixty-day time limit is not jurisdictional and is subject to the sound exercise of the court's discretion." Hearing Transcript at 5. He also expressly found that, on the facts, plaintiffs' reliance on the bar date set forth in the Notice was reasonable and, hence, that the complaint would not be dismissed. Hearing Transcript at 7. This finding of fact is not clearly erroneous.[2] Accordingly, even if this Court were to grant leave to appeal, such an appeal would be futile.

### CONCLUSION

For the foregoing reasons, defendant's motion seeking leave to appeal the orders of the bankruptcy court are denied. The orders are not otherwise appealable. Defendant's motion seeking a stay of the adversary proceeding and transfer pending appeal is denied as moot. The Clerk of the Court is directed to close the case.

SO ORDERED.

---

**2.** In reviewing a decision of the bankruptcy court, a district court applies a *de novo* standard of review to conclusions of law and a clearly erroneous standard for examining conclusions of fact. *See In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988 (2d Cir.1990). *In re Nemko, Inc. (Chase Manhattan Bank v. Nemko, Inc.)*, 202 B.R. 673, 677 (E.D.N.Y.1996).