Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

**SUPREME MALT PRODUCTS CO., Inc., v. UNITED STATES.**

No. 4043.

Circuit Court of Appeals, First Circuit.

Jan. 15, 1946.

MAHONEY, Circuit Judge.

The defendant was convicted on an information which charged that it "did engage in the business of purchasing for resale at wholesale distilled spirits, wines, or malt beverages without having secured the basic permit required by Section 3(c) of the Federal Alcohol Administration Act; Section 203(c) Title 27, U.S.C." [1] At the close of the government's case, the defendant moved for a directed verdict. The

[1] 27 U.S.C.A. § 203(c).
"(c) It shall be unlawful, except pursuant to a basic permit issued under this chapter by the Secretary of the Treasury—

"(1) to engage in the business of purchasing for resale at wholesale distilled spirits, wine, or malt beverages."

lower court reserved decision and submitted the case to the jury. After conviction, it denied the motion to direct and a motion to set aside the verdict. It refused to reconsider its decision on both motions and imposed sentence.

The defendant corporation operated a retail package goods store in Boston where it sold alcoholic beverages and had a qualified wholesaler's license which permitted it to make sales at wholesale except for resale. Since the qualified wholesaler's license did not cover sales at wholesale to buyers contemplating resale of the liquor, the question before us is whether the evidence warranted a conviction under the statute for engaging in the business of purchasing liquor for sale at wholesale to buyers intending to resell the same.

The testimony showed that Waclaw I. Nartout was treasurer of the Polish American Citizens Association, a social club at 644 Cambridge Street, Cambridge, which sold alcoholic liquor at retail to its members and their guests. He had for a considerable period of time purchased liquor for his own use at defendant's store but had never bought liquor there for the club. On September 17, 1943, when there was a shortage in the general market, he visited defendant's store and talked with the clerk about the purchase of some liquor. Nartout told the clerk that he might wish to buy some liquor for the club but that he would have to obtain authorization from the officers of the club before making the purchase. The clerk asked Nartout how much he could buy; Nartout inquired how much he could spare, and the clerk replied that he could spare "about 20 cases." The next day Nartout went to the store, bought the liquor in question and gave a club check, signed by him as treasurer, in payment. Nartout was unable to produce the cancelled check at the trial. The bill was made out to him personally and he directed the clerk to send the goods to 644 Cambridge Street, Cambridge, where they were delivered. The sales slip showing a sale of twenty cases for $741.60 was made out in the name of Nartout. The club's account book which was kept by him showed an entry in his name for the purchase in the same amount as the sales slip.

Upon appeal the contention is made that the lower court was in error in denying defendant's motion for directed verdict and motion to set aside the verdict, on the ground that the evidence is insufficient to prove the charge alleged; that the statute does not apply to the facts in this case; that there was no evidence that the defendant was engaged in the business of purchasing for resale at wholesale distilled spirits in violation of the statute.

Considering the evidence in the light most favorable to the government, the jury could have and apparently did find that the defendant sold to the club at wholesale in full knowledge that the goods would be resold. For the purpose of this case only, we will assume that the government is correct in its contention that the statute does not require proof of a purchase by the defendant with the concurrent intent to sell at wholesale in violation of the statute.

However, we do not think that the government has sustained the burden of showing that the defendant was *engaged in the business* of purchasing liquor for resale at wholesale to buyers intending to resell the same. The only evidence offered by the government to support its contention that the defendant was engaged in this business was a single sale of this kind made without the basic permit. There are no other circumstances from which the jury could have inferred that the defendant either intended to sell or had sold liquor at wholesale to a buyer intending to resell the same in more than the sole instance above described.

The words of the statute, "to engage in the business", imply an element of continuity or habitual practice. " 'Engaged in business' means occupied in business; employed in business. 'Carrying on business' does not mean the performance of a single disconnected business act. It means conducting, prosecuting, and continuing business by performing progressively all the acts normally incident thereto, and likewise the expression 'doing business', when employed as descriptive of an occupation, conveys the idea of business being done, not from time to time, but all the time." Lewellyn v. Pittsburgh, B. & L. E. R. Co., 3 Cir., 222 F. 177, 185, 186. We take the phrase, "engaged in business" to be synonymous with "carrying on business" or "doing business." Hence the making of a single sale is not in itself "engaging in the business." Evidence of a single sale "is to be interpreted in the light of all the circumstances, and it may vary from being little or no evidence up to the point of being convincing evidence that the seller

is carrying on the business." Bailey v. United States, 6 Cir., 1919, 259 F. 88, 92.

In Johnson v. United States, 5 Cir., 1936, 84 F.2d 114, the defendant was convicted of carrying on the business of wholesale liquor dealer without first paying the special tax required by law. Only one wholesale sale was proved. But the evidence disclosed that defendant had been operating several large moonshine stills. Also, he had stated to a witness that the way to transport liquor was to conceal it at the bottom of a load of vegetables; that he had been caught once by federal men, and did not intend to be caught any more. The evidence of a single sale, in connection with the other circumstances of the case, was held to warrant the jury's inference that defendant was engaged in the business of wholesale liquor dealer.

In Kiersky v. United States, 6 Cir., 1920, 263 F. 684, the defendant was convicted of carrying on the business of a retail liquor dealer, without having paid the special tax therefor. The defendant was carrying on what was ostensibly a soft drink establishment. A sale of intoxicating liquor on the premises was proved. A search of the room uncovered 50 cases of whiskey, in coca-cola boxes. A bottle of whiskey, wrapped in a towel, was found behind the bar. These, and other circumstances, warranted the finding that the defendant was engaged in the business of selling liquor at retail, though only a single sale was proved. There was no other convincing explanation of the presence of so large a quantity of liquor on the premises. Rooks v. United States, 6 Cir., 1920, 263 F. 894, was a similar case.

In the case at bar, there is a legitimate explanation of the defendant's possession of liquor in large quantities and of the paraphernalia incident to a liquor business. It was lawfully engaged in the retail liquor business and in making certain kinds of sales at wholesale. In the absence of other corroborating circumstances, proof of the single sale to Nartout, presumably with the knowledge that the liquor was to be resold at the social club, does not support a finding that defendant was engaged in the business of selling liquor at wholesale in violation of the statute.

Because of the view we take of this case, it is unnecessary to consider other questions raised on this appeal. The motion for a directed verdict should have been granted.

The judgment of the District Court is reversed and the case is remanded to that court for further proceedings not inconsistent with this opinion.