**In the Matter of HEIDEL HOUSE ENTERPRISES, INC., Debtor.**

**Bankruptcy No. MM11–84–01365.**

United States Bankruptcy Court, W.D. Wisconsin.

July 30, 1984.

James Sweet, Murphy, Stolper, Brewster & Desmond, S.C., Madison, Wis., for debtor.

Trayton Lathrop, Isaksen, Lathrop, Esch, Hart & Clark, Madison, Wis., for Floyd J. and C. Lorraine Voight.

Dale Peterson, Stroud, Stroud, Willink, Thompson & Howard, Madison, Wis., for Rural Sec. Life.

## ORDER

ROBERT D. MARTIN, Bankruptcy Judge.

Brian H. Heidel, Vice President of the debtor ("the corporation") signed a chapter 11 petition filed on behalf of the corporation on June 15, 1984. Mr. Heidel's authority to file for the corporation has been challenged by Floyd J. and C. Lorraine Voight, members of the board of directors of the corporation.

The essentials of the lengthy and tangled background of contention between the parties may be briefly summarized. As part of a settlement of litigation between the Voights and the Heidels on August 11, 1981, the Heidels delivered a promissory note of the corporation ("the note") to the Voights, together with two mortgages and other security instruments. Floyd Voight, in turn, assigned all of his 100 shares in the corporation; 50 shares to Brian Heidel and 50 shares to Brent Heidel. The Heidel brothers also pledged all of their stock in the corporation to the Voights, as security for the corporation's promissory note.

The stock pledge agreement provided, *inter alia*, that

> [t]he pledgees or their assigns shall have the right to vote all of the shares of stock in said corporation in the event said note is not paid in full at or before the time the balance unpaid on the note becomes due. Such right to vote shall continue until said note is paid in full or said stock is sold under this pledge agreement, in which event the right to vote the stock shall vest in the purchase thereof. Except as stated above, the pledgors shall have the right to vote their respective shares of stock which are pledged hereby.

The mortgage, given concurrently with the note and stock pledge, contained numerous "special covenants," including obligations to keep the premises free of superior liens, to avoid waste, and to comply with all covenants of the mortgages, leases, and "every other agreement pertaining to the use of properties." The mortgage further provided for acceleration of the note if a default should continue for forty-five days after notice, and immediate acceleration upon a violation of certain of the special covenants.

By letter dated March 3, 1983 the Voights gave notice to the Heidels of several acts of default, thereby starting the running of the forty-five day period at the end of which the note would be accelerated. The Voights granted the Heidels' first request for extension of the due date, to April 19, 1983, and a second extension, to May 19, 1983. As part of the arrangement leading to the second extension, the Voights were elected to the debtor's board on April 19, and the debtor's corporate by-laws were amended on the same date to require a unanimous vote of the board to authorize a filing under the Bankruptcy Code. Before April 19, 1983 the by-laws had been silent on the question of authority to petition for bankruptcy.

Since no further extensions were granted to the Heidels, the Voights contend that as of May 19, 1983 the Heidels lost their right to vote the pledged shares, and, in particular, that the action of the Heidels on February 20, 1984, acting as "all the shareholders of Heidel House Enterprises, Inc.;" purporting to amend the by-laws further by deleting the provision requiring unanimity for filing bankruptcy, is void *ab initio*.

The Heidels deny that defaults took place, and contend that WIS.STAT. § 180.-25(8)[1] renders the voting provision of the pledge agreement void.

 After a careful review of the evidence presented at a hearing on July 23, 1984, and of the excellent legal memoranda provided by counsel, this court finds and concludes:

---

1. WIS.STAT. § 180.25(8) provides:
 A shareholder whose shares are pledged shall be entitled to vote such shares until the shares have been transferred into the name of the pledgee, and thereafter the pledgee shall be entitled to vote the shares so transferred.

(1) that on and after May 19, 1983, the debtor was in default on its note for $610,-650.84 to the Voights in that the debtor failed to make scheduled payments on its lease to Grey Rock Joint Venture and on its mortgage note to Ripon Federal Savings and Loan Association;

(2) that as a result of the debtor's pre-petition defaults, which were duly noticed on March 3, 1983, and by subsequent extensions, the entire sum of the subject note became due and payable on or about May 19, 1983;

(3) that as a result of the default the Heidels were divested of their rights to vote their shares in the corporation;

(4) that the purported amendment to the debtor's by-laws, dated February 20, 1984, authorizing the debtor's president to file a bankruptcy petition, was without effect, and that the prior provision of the corporate by-laws which required unanimous action of the board of directors for bankruptcy filing, dated April 19, 1983, was then in force, but that in any event a bankruptcy filing, in the absence of corporate by-laws empowering an officer to file, is a special act of the corporation requiring specific authorization by the Board; [2]

(5) the bankruptcy filing for this debtor, attempted by Brian Heidel on the purported authority of the amended by-laws and instructions from Brent Heidel, President of Heidel House Enterprises, Inc., on June 15, 1984, was without authority and therefore void; and

(6) Although WIS.STAT. § 180.25(8) appears to prevent pledgees from voting pledged stock until such stock is transferred to them, this provision may be modified by agreement. This conclusion is compelled by the strong public policy in favor of enforcing settlement of litigation among informed parties.[3]

Accordingly, it is ORDERED

that this bankruptcy case must be, and hereby is, dismissed.

---

**2.** *See, e.g. In Re Crescent Beach Inn, Inc.,* 22 B.R. 155, 157 (Bankr.D.Maine 1982), *In Re Al-Wyn Food Distributors, Inc.,* 8 B.R. 42 (Bankr.M.D.Fla.1980); *In Re Great Northwest Development Co.,* 28 B.R. 141, 143 (Bankr.E.D.Mich.1983).

**3.** Counsel for the Heidels ably argues that since certain provisions of the Wisconsin Business Corporation Law, WIS.STAT. ch. 180, provide for variation by articles or by-laws, the principle of *expressio unius est exclusio alterius* requires the conclusion that absent such language, a statute may not be departed from by contract. The principle invoked cuts both ways however, and the chapter is silent as to variation by private contract. In the present case, all parties were sophisticated business people settling pending litigation. Section 180.25(8) of the Wisconsin statutes does not appear to contain an express—or even an implied—prohibition against agreements varying its items. Further, the nature of a violation of the terms of this statute could hardly be said to be *"malum in se,"* and while some public policy concern for apparent corporate authority no doubt underlies this section, public policy concern is at its nadir where all the parties are disputing rights in a close corporation of which they comprise virtually all the major participants. *See, e.g. Continental Insurance Co. v. Daily Express, Inc.,* 68 Wis.2d 581, 589, 229 N.W.2d 617 (1975) (invocation of public policy ground to invalidate contract available only in cases free from doubt); *Chapman v. Zakzaska,* 273 Wis. 64, 76 N.W.2d 537 (1956). *See Armstrong v. Board of School Directors of the City of Milwaukee et al.,* 616 F.2d 305 (7th Cir.1980) (federal courts favor voluntary settlements of litigation); *Benz v. Zobel,* 255 Wis. 542, 39 N.W.2d 713 (1949) (a settlement deliberately made should not·be opened except upon clear proof of fraud or mistake).