Gary A. LAINER, Plaintiff,

v.

CITY OF BOSTON, Paul F. Evans, Christopher Crager, Christopher Mac-Neil, and John F. Honen, Defendants.

No. 99–12557–JLT.

United States District Court, D. Massachusetts.

April 10, 2000.

Robert M. Mendillo, Mendillo & Ross, LLP, Boston, MA, for Plaintiff.

Kevin S. McDermott, City of Boston Law Dept., Boston, MA, for Defendants.

## MEMORANDUM

TAURO, District Judge.

### I. Background:

Plaintiff brings this cause of action against the City of Boston, the Commissioner of the Boston Police Department ("BPD"), and three of its officers. He seeks injunctive relief and damages stemming from his arrest for selling a ticket to a Boston Red Sox game outside Fenway Park. Jurisdiction arises under 28 U.S.C. §§ 1331, 1339, for Plaintiff's federal claims under 42 U.S.C. § 1983 and the pendant state claims, respectively.

Plaintiff Gary Lainer is a veterinarian, living and working in Canton, Massachusetts. He brings this action individually, and on behalf of a class of "former, present and future lawful holders of [Boston] Red Sox tickets, who are *not* engaged in the *business* of reselling tickets, and who seek to sell tickets outside Fenway Park at or below face value." Amended Complaint at ¶ 8 (emphasis in original).[1]

Plaintiff alleges that on Saturday, July 31, 1999, he went with friends to Boston's Fenway Park to attend a baseball game between the Red Sox and the New York Yankees. *See* Am.Compl. at ¶ 11. Plaintiff had two tickets for $18 grandstand seats, one for himself and one for a friend who, at the last minute, was unable to attend. *See id.* at ¶ 12. In an effort to recoup the price of the ticket, Plaintiff walked along Brookline Avenue and called out: "'Anybody need a ticket?'" *Id.* at ¶ 13. Having found an interested buyer just outside Fenway, Plaintiff asked for $18, received a twenty dollar bill, turned over the ticket, and attempted to offer change up. *See id.* Plaintiff alleges that

he was then grabbed by two of the Defendant officers, punched from behind in his right kidney area, handcuffed, arrested, and taken to the District Four Police Station. *See id.* at ¶ 14.

Once he arrived at the Station, Plaintiff was "booked, photographed, fingerprinted, chained to a wall" and charged with: violating Massachusetts's "anti-scalping" statute, Mass.Gen.Laws ch. 140, § 185A; hawking and peddling without a license in violation of Mass.Gen.Laws ch. 101, § 14; and occupying a public way without a permit in violation of a municipal ordinance. Am.Compl. at ¶ 15. Plaintiff was held at the station for two and a half hours, after which he was released with a notice to appear in the Roxbury District Court. When the police released Plaintiff, his own ticket was retained as "evidence." *See id.* at ¶ 16. At his appearance on August 2, 1999, and after a two hour wait, Plaintiff was charged with the above violations. *See id.* at ¶ 18. Following an additional two hour wait those charges were dismissed.

Plaintiff's Complaint was removed to this court on December 13, 1999, and Defendants answered a week later. The Amended Complaint (filed March 14, 2000) brings the following counts: illegal seizure (Count I); illegal seizure under § 1983 (Count II); false arrest and imprisonment (Count III); false arrest under Mass.Gen. Laws ch. 12 § 11I (Count IV); and false arrest under § 1983 (Count V).

At issue here today is Plaintiff's motion for a preliminary injunction.

### II. Analysis:

Plaintiff alleges that the Boston Police Department has a long-standing policy of arresting any person that attempts to sell or transfer Boston Red Sox tickets outside Fenway Park, regardless of the price charged. Plaintiff avers that this interpretation of Massachusetts's anti-scalping law

---

1. The other key players are the named Defendants: Paul Evans, Commissioner of the BPD, and Christopher Crager, Christopher Mac-Neil, and John Honen, all BPD officers.

is in error, and seeks a preliminary injunction to prohibit its continued enforcement.[2] Before the court can determine whether a preliminary injunction is warranted, however, it first must examine the parameters of Massachusetts's anti-scalping laws and the BPD's interpretation thereof.

### A. Massachusetts's Anti-scalping Law.

■ Massachusetts's ticket scalping statute states that "[n]o person shall *engage in the business of reselling any ticket* or tickets of admission or other evidence of right of entry to any theatrical exhibition, public show or public amusement or exhibition ... without being licensed therefore by the commissioner of public safety." Mass.Gen.Laws ch. 140, § 185A (1924) (emphasis added). On its face, this statute regulates the resale of tickets as a business venture, requiring individuals to obtain a license before engaging in that practice. What little precedent exists supports such an interpretation.

In *Commonwealth v. Sovrensky,* 269 Mass. 460, 169 N.E. 418 (1929), the defendant challenged his conviction under § 185A, arguing that the evidence showed only one transaction, and thus that he could not have been engaged in the business of reselling tickets. The Supreme Judicial Court disagreed, finding that:

> It is true that the offense denounced by § 185A ... is engaging in the business "of reselling" tickets; and that it is the

occupation and not an isolated act which is forbidden.... [O]ne may be engaged in the business of selling although he had made no sale. A single sale taken with other circumstances may be enough to make out the offence of doing business.

*Id.,* 269 Mass. at 462–63, 169 N.E. 418. Under the court's opinion, the determinative issue is therefore whether the circumstances of the sale suggest that the defendant was doing business. Examining the circumstances in *Sovrensky,* the court held that "walking about in front of the place of the public amusement, calling aloud the desire to sell, having other tickets on one's person, [and] charging a price above the box office price,[3] are consistent with doing a business of selling." *Id.* at 463, 169 N.E. 418.

The City asserts that *Sovrensky* and § 185A stand for a different proposition, that *any* sale of tickets is a commercial transaction that constitutes the *business* of reselling. *See* Defendants' Opposition at 2. This interpretation is in error. *Sovrensky* explicitly demands an inquiry into the circumstance of the sale. If *any* sale of tickets ran a foul of the line drawn by § 185A, than such an inquiry would be superfluous. Similarly, the statute would not need to proscribe sales by those "in the business," the legislature could simply have restricted *any* resale without a license.[4]

---

**2.** Plaintiff also challenges the City's application of the statute prohibiting "hawking and peddling" without a license, Mass.Gen.Laws ch. 101, § 14, and other municipal ordinances prohibiting the occupation of a public way without a permit. Defendants' opposition, however, addresses only the arguments made relating to Mass.Gen.Laws ch. 140, § 185A. The court assumes, therefore, that the application of these other regulations turns on whether or not § 185A properly applied to Plaintiff's conduct.

**3.** Soverensky charged $15 for the tickets he sold outside Boston Garden (for a wrestling match); this was triple the box office price of $5. *See id.,* 269 Mass. at 461, 169 N.E. 418.

**4.** Defendants also argue that the 1936 amendments to § 185A support their position by including language that "[t]he sale of a ticket or pass entitling the holder thereof to admission to any such theatrical exhibition, public show or public amusement or exhibition upon payment of either nothing or a sum less than that demanded of the public generally, shall be deemed to be a resale thereof within the meaning of the section." Mass.Gen.Laws. ch. 140, § 185A (amended by 1936 Mass.Acts, ch. 279). While this language may draw into the statute sales that are not made for profit, the amendment does not alter the statute's requirement that the individual be "in the business of reselling." As such the amendment does not alter the impact of *Sovrensky.*

By the plain language of § 185A, and the SJC's sole pronouncement on the statute, Massachusetts law plainly precludes the resale of tickets only where done in the course of business, without a license.

### B. Boston Police Department's Arrest Policy

Plaintiff avers that the BPD has a long-standing policy of arresting anyone that attempts to sell tickets outside Fenway Park. This allegation is supported by a mound of evidence, most probative of which are official policy statements of the Boston Police Department. In the BPD All Star Game Enforcement Manual, officers are instructed that any individual may be arrested for reselling game tickets, for any amount, in a public area. *See* Plaintiff's Record of Evidence at 33. As authority for the arrest, officers are instructed to cite § 185A, as well as other state and local regulations applying to selling merchandise and occupying public streets. *See id.* In addition, according to BPD spokesman Kevin Jones, anti-scalping laws apply regardless of what the selling price is. *See* Record of Evidence at 68A (Patricia Wen, "Taken at face value, ticket-sale law confusing," Boston Globe, October 25, 1999 at B4). As the BPD's own statements demonstrate, officers are clearly given the "green light" to arrest anyone that attempts to resell tickets.

Plaintiff also provides ample documentary evidence to drive home his assertion that the City employs an automatic arrest policy. In his record of evidence, Plaintiff attaches affidavits from four different individuals who had experiences similar to Plaintiff. *See* Record of Evidence at 1, 17, 20, 57. In addition he includes numerous Boston Globe articles recounting stories of fans who were arrested when they attempted to sell or even give away tickets. *See id.* at 13, 14, 68. In every instance the individual was arrested, charged, and forced to appear in court, only to have the charges dismissed (generally with the imposition of court costs). For example,

Russell Porges attended a game on April 18, 1999, with approximately twenty children that he supervised as youth director of Temple Beth Emanah USY. *See* Record of Evidence at 20 (Affidavit of Russell Porges). When he attempted to sell extra tickets at 25% of their face value he was arrested, handcuffed, finger-printed, and held for two and a half hours until permitted to post bail. *See id* at 21. When he appeared in Roxbury District Court the charges were dismissed and he was charged $60 in court costs. *See id.* In all of the various accounts, not a single individual was questioned as to whether they were in the business of selling tickets, or whether they possessed a license to sell tickets. Each was arrested solely on the basis of an attempt to sell or give away tickets, and all charges were eventually dismissed.

Plaintiff's evidence clearly demonstrates, therefore, that the BPD's policy is to arrest anyone that attempts to resell tickets, even if the sale price is equal to, or less than, the ticket's face value, and even if there is no probable cause to establish that said person is engaged in the business of reselling tickets.

### C. The Standard for Granting a Preliminary Injunction.

A motion for a preliminary injunction is decided by considering four factors. *See Narragansett Indian Tribe v. Guilbert,* 934 F.2d 4, 5 (1st Cir.1991). These factors include: (1) whether Plaintiff will suffer irreparable injury if no injunction is granted; (2) whether the possible injury outweighs the harm to Defendants in granting the injunction; (3) Plaintiff's likelihood of success on the merits; and (4) whether granting an injunction will adversely affect the public interest. *See id.* Weighing these factors, Plaintiff has convincingly demonstrated that a preliminary injunction is appropriate here.

### 1. Plaintiff Demonstrates a Likelihood of Irreparable Injury.

Plaintiff leads off by arguing that he will suffer irreparable injury by the continued

erroneous enforcement of Mass.Gen.Laws ch. 140, § 185A. This is a strong start, as Supreme Court precedent holds that the deprivation of constitutional rights may constitute per se irreparable injury. *See Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). The BPD's arrest policy is contrary to the controlling statute which prohibits an unlicensed person from engaging in the business of reselling tickets. Arrests under the flawed policy are unconstitutional, thus posing the risk of irreparable injury to Plaintiff.

Defendants respond with two arguments, both of which this court rejects. First, Defendants assert that the BPD is justified in arresting any individual that attempts to resell his or her ticket. As discussed above, neither Massachusetts law or precedent supports such a reading. Second, Defendants argue that there can be no irreparable harm because none of the potential Plaintiffs are permitted to resell their tickets by the Boston Red Sox. This argument is without merit. The ticket policy of the Boston Red Sox has no bearing on an individuals right to be free from wrongful arrest. The Red Sox policy is a private contract between the team and the ticket purchasers, and to the extent that its limitations exceed those imposed by Massachusetts law, it may not be enforced by the Boston Police Department.

Plaintiff thus demonstrates a risk of irreparable injury from Defendants' erroneous application of Massachusetts's anti-scalping law.

### 2. The Risk of Injury to Plaintiffs Outweighs Any Harm from an Injunction.

Next, Plaintiff convincingly argues that the risk of injury outweighs any harm to Defendants that might result from issuing an injunction. This argument finds ample support in the simple fact that Plaintiff's proposed injunction seeks nothing more than proper enforcement of Massachusetts's anti-scalping law. Defendants cannot properly assert that they will suffer harm by an injunction that merely prohibits them from conducting arrests that are not supported by law.

The balance of harm therefore weighs heavily in favor of granting an injunction.

### 3. Plaintiff Demonstrates a Likelihood of Success on the Merits.

Plaintiff further argues that he can demonstrate a likelihood of success on the merits because his attempt to resell an extra ticket was not prohibited by Massachusetts law. To reach such a conclusion, *Sovrensky* requires us to examine the circumstances surrounding his arrest. *See id.,* 269 Mass. at 462–63, 169 N.E. 418. Plaintiff alleges that while he was walking along Brookline Avenue he called out, "anybody need a ticket?" Am.Compl. at ¶ 13. When Plaintiff was approached by a buyer, he offered the ticket for its face value. *See id.* There is no evidence to indicate that Plaintiff was in the business of reselling tickets, nor is there evidence that contradicts Plaintiff's explanation for his attempted sale—he was disposing of an extra ticket. Finally, the evidence suggests that the Defendant officers made no effort to determine Plaintiff's status and motive prior to arresting him. In short, the evidence indicates that Plaintiff was not in violation of Massachusetts law, and that he was wrongfully arrested.

Defendants argue that Plaintiff's arrest was justified under *Sovrensky* and that he was arrested in clear view of a "warning sign." Defs.' Opp'n at 6. Neither argument has merit. *Sovrensky* is easily distinguished by the fact that the defendant there attempted to resell his ticket for three times its value, adding weight to the conclusion that he was "in business." *Id.,* 269 Mass. at 461, 169 N.E. 418.

Plaintiff has thus demonstrates a likelihood of success on the merits.

### 4. Public Interest is Advanced by Issuing an Injunction.

Finally, Plaintiff argues that the public interest is met by proper enforcement of

**22**

Massachusetts law. This is self evident. Defendants respond that an injunction would prevent the BPD from enforcing the law and might lead to Red Sox fans being "accosted or impeded by scalpers." Defs.' Opp'n at 7. Nothing on the records suggests such risks. Instead, an injunction will insure that innocent fans are not arrested and detained where no crime has taken place.

Public interest is therefore strongly advanced by imposition of an injunction.

### III. Conclusion:

Taking each of the four factors into consideration, Plaintiff has demonstrated that an injunction is warranted. As per the attached order, Plaintiff's motion is ALLOWED.

IT IS SO ORDERED.

### ORDER

The court hereby ALLOWS Plaintiff's motion for a preliminary injunction. The court enjoins Defendants, and all of their officers, agents, servants, employees, attorneys and those persons in active concert or participation with them, from attempting to arrest, threatening to arrest, arresting, and prosecuting any person who attempts to resell or resells any ticket to a Boston Red Sox baseball game in the vicinity of Fenway Park, at or below the face value of the ticket, unless they have probable cause, at the time of arrest, to believe that said person is a person engaged in the business of reselling tickets, and is not duly licensed as required by Mass.Gen. Laws ch. 140, § 185A.

IT IS SO ORDERED.