In re COUNTRY ESTATES NURSING HOME, INC., Debtor.

In re Forestview Nursing Home of Wareham, Inc., Debtor.

In re Meadowbrook Nursing Home, Inc., Debtor.

In re Rochdale Commons Nursing Home, Inc., Debtor.

Nos. 01–17053–JNF, 01–17064–JNF, 01–17058–JNF, 01–17062–JNF.

United States Bankruptcy Court, D. Massachusetts.

Sept. 28, 2001.

Robert M. Somma, David J. Reier, Schnader Harrison Goldstein & Manello, Boston, MA, for Country Estates Nursing Home, et al.

James C. Gross, Klieman, Lyons, Schindler & Gross, Boston, MA, for Robert M. Platt.

Stephen F. Gordon, Gordon & Wise, LLP, Boston, MA, for Richard Tuch and Georgia & William Freid.

David Madoff, Cohn, Kelakos, Khoury, Madoff & Whitesell, Boston, MA, for Commonwealth Communities.

Patricia Antonelli, Partridge, Snow & Hahn, LLP, Providence, RI, for Peoples Bank.

Paula R.C. Bachtell, Office of the United States Trustee, Boston, MA.

## MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

## I. INTRODUCTION

The matters before the Court are Motions to Dismiss filed by William Freid and Georgia Freid (collectively, the "Freids"), stockholder and creditors, of the Chapter 11 Debtors, Country Estates Nursing Home, Inc. ("Country Estates"), Forestview Nursing Home of Wareham, Inc. ("Forestview"), Meadowbrook Nursing Home, Inc. ("Meadowbrook"), and Rochdale Commons Nursing Home, Inc. ("Rochdale") (collectively, the "Debtors" or the "Nursing Homes"). The Freids seek dismissal on the ground that the filings of the Chapter 11 petitions by Robert M. Platt ("Platt") were unauthorized. They

maintain that because the holders of the voting rights in the stock of the Debtor corporations had voted to remove the board of directors and had replaced all members, Platt and the prior boards of directors lacked the authority to authorize the filings. The issue presented is whether the stock pledgee, which voted Platt's shares on September 6, 2001, pursuant to a certain Stock Pledge Agreement, did so without violating the automatic stay in Platt's individual case, which was commenced on August 1, 2001. For the reasons stated below, the Court, on September 19, 2001, determined that the actions taken violated the automatic stay in Platt's individual Chapter 11 case and denied the Motions to Dismiss.

## II FACTS

Platt filed a Chapter 11 petition on August 1, 2001. On August 30, 2001, he filed Schedules and a Statement of Financial Affairs.[1] On Schedule B–Personal Property, he listed ownership interests in the Nursing Homes as follows:

| Country Estates | 76% interest |
| Forestview | 100% interest |
| Meadowbrook | 45% interest |
| Rochdale | 76% interest |

He also disclosed on Schedule B that Country Estates owed him $189,000; Meadowbrook owed him $1,023,000; and Rochdale owed him $308,000. Moreover, in response to question 20 concerning "[o]ther contingent and unliquidated claims," he listed claims against Commonwealth Communities Management Co., Inc., Commonwealth Communities Development Co., Inc., and Commonwealth Communities Development LLC "for mismanagement of nursing facilities in which Debtor is a principal."

Joel I. Cherwin, corporate counsel for the Debtors, has possession of the corporate minute books and stock records. In Affidavits filed on September 17, 2001 in the corporate cases, he disclosed the following information about the Debtors:

| Corporation | Country Estates | Forestview | Meadowbrook | Rochdale |
|---|---|---|---|---|
| Director(s) | Platt<br>Jonathan Gould | Platt | Platt<br>Gould<br>Larry Lentz | Platt<br>Gould |
| Stockholder(s) | Platt–76 shares<br>Georgia Freid–24 shares | Platt–100 shares | Platt–90 shares (45%)<br>Lentz–86 shares (43%)<br>Freid–24 shares (12%) | Platt–76 shares<br>Freid–24 shares |
| Clerk | Gould | Joel Cherwin | Gould | Gould |

On Schedule D–Creditors Holding Secured Claims, the Debtor listed Commonwealth Communities Development Co., Inc. as the holder of claim in the sum of $3,000,000 and the Freids as the holders of a claim in the sum of $1,850,000. Platt described the nature of Commonwealth Communities Development Co., Inc.'s lien as arising from a pledge of his common stock of Senior Health Management, Inc., subject to the prior lien of Richard Tuch, the pledge of the common stock of Country Estates, Meadowbrook, and Rochdale, subject to the prior lien of the Freids, and the pledge of the stock in Forestview. He described the Freids' lien as arising from both an Indemnity Agreement dated May 31, 1992 and a pledge of the stock of Country Estates, Meadowbrook and Rochdale. Platt also listed the Freids on Schedule F–Creditors Holding Unsecured Nonpriority Claims as the holders of a

1. The Court takes judicial notice of the documents filed in Platt's Chapter 11 case.

claim in the sum of $1,000,000 subject to possible offset, as well as on Schedule H–Codebtors with respect to the following creditors: HDC, Healthstyles Development, and Peoples Savings Bank.[2]

Platt's debt to Commonwealth Communities Development Co., Inc. arises from two separate loan transactions and a number of other agreements, as well as a Settlement Agreement. On November 27, 1996, Platt, the Debtors, Willow Glen Nursing Home, Inc., Country Estates Partnership, Meadowbrook Partnership, Rochdale Commons General Partnership, and Senior Health Management, Inc. (collectively, the "Platt Parties") executed a Bridge Loan Agreement with Commonwealth Communities Development Co., Inc. pursuant to which the parties represented that they had reached an agreement in principal for Commonwealth Communities Development Co., Inc., or its designee, to enter into long-term leases of the Nursing Homes and to obtain certain options to acquire equity in certain Platt controlled entities. Pursuant to the Bridge Loan Agreement and the Term Note of the same date, the Platt Parties, namely, Platt, the Debtors, Willow Glen Nursing Home, Inc., the Partnerships, and Senior Health Management, Inc., agreed to borrow and to be jointly and severally liable for the repayment on November 30, 1997 of a $500,000 loan from Commonwealth Communities Development Co., Inc. As collateral for the loan, Platt executed a Stock Pledge Agreement, pledging his stock in the Debtors, as well as Willow Glen and Senior Health Management, Inc., subject to any prior liens of Georgia Freid and Richard Tuch. The Bridge Loan Agreement defined events of default at ¶ 11, while in the Stock Pledge Agreement the parties 1) recognized at ¶ 3.2 that "[t]he Pledgor is the legal and beneficial owner of all of the Pledged Stock;" and 2) set forth at ¶ 5 the remedies available to Commonwealth Communities Development Co., Inc. upon default, including the right

> to vote all or any part of the Pledged Stock (whether or not transferred into the name of the Lender) and give all consents, waivers and ratifications in respect of the Collateral and otherwise act with respect thereto as though it were the outright owner thereof (the Pledgor hereby irrevocably constituting and appointing the lender its employees, agents, successors and assigns the proxy and attorney-in-fact of Pledgor, with full power of substitution to do so). . . .

On December 31, 1997, Commonwealth Communities Development LLC, Commonwealth Communities Development Co., Inc. and the Platt Parties executed an "Amended and Restated Loan Amendment and Security Agreement," and Platt, individually executed an Amended and Restated Promissory Note in the principal amount of $1,325,000 due and payable "on the earlier of (i) the Master Agreement Closing . . . dated as of April 16, 1996 . . . ; (ii) the date on which the holder of that certain Term Note, dated November 27, 1996, made in favor of Commonwealth Development by the Maker, the Platt Entities (other than Willow Glen Partnership) and certain entities owned in whole or in part by the Maker, demands payment in accordance with the terms of such Term Note; or (iii) January 2, 1999." Approximately ten months later, on October 20, 1998,

---

2. Platt disclosed that his unsecured debt totals approximately $16,000,000, including debts owed to Forestview in the sum of $5,140,000, Senior Health Management, Inc. in the sum of $1,600,000, HDC in the sum of $2,196,000, Healthstyles Development in the sum of $2,534,000, and Peoples Savings Bank, pursuant to a guaranty in the sum of $1,850,000.

Platt executed "Eighteenth Allonge to Amended and Restated Promissory Notes" setting forth an amount due of $1,676,063.

Platt failed to repay the Term Note and the amount due under the Restated Promissory Note on January 2, 1999. On November 27, 2000, counsel to Commonwealth Communities Development Co., Inc. and Commonwealth Communities Development LLC advised Platt and the Platt Parties of their defaults under the various agreements in four separate letters, demanding payments well in excess of $4,000,000 on or before December 11, 2000. On March 15, 2001, counsel to Commonwealth Communities Development Co., Inc. and Commonwealth Communities Development LLC provided Platt with a notice pursuant to the Stock Pledge Agreement dated November 27, 1996, as amended, that it intended to dispose of the pledged stock by public sale, commencing at 9:00 a.m. on April 2, 2001.

Commonwealth Communities Development Co., Inc. and Commonwealth Communities Development LLC commenced three civil actions against Platt and his affiliated entities in the spring of 2001 in Middlesex Superior Court. The parties, however, entered into a Settlement Agreement on May 8, 2001, pursuant to which the two Commonwealth entities and Platt, the Debtors, Willow Glen Nursing Home, Inc., Country Estates Partnership, Meadowbrook Partnership, Rochdale Commons Partnership, Willow Glen Partnership and Senior Health Management, Inc. (referred to collectively in the Settlement Agreement as Platt) agreed to a closing under the Settlement Agreement to occur on or before June 8, 2001, at which time Platt would issue a negotiable promissory note in the principal amount of $3,300,000. The closing did not take place on or before June 8, 2001, and, on that same day, Commonwealth Communities Development Co.,

Inc., Commonwealth Communities Development LLC, and Commonwealth Communities Management Co., Inc., through their counsel, issued a notice of default to Platt, advising him that it was reserving its rights and remedies, including its right "to foreclose on its interests in the Collateral." Platt filed his Chapter 11 petition on August 1, 2001. Prior to that date, Platt, Senior Health Management, Inc., Tuch and the Debtors filed an action against Commonwealth Communities Management in the Middlesex Superior Court seeking injunctive relief, but before Commonwealth Communities Development Co., Inc. had foreclosed its interest in its collateral, namely the Stock Pledge.

On September 6, 2001, Douglas Noble, on behalf of Commonwealth Communities Development LLC, as agent for Commonwealth Communities Development Co., Inc., and Georgia Freid executed a document captioned, "Action of the Stockholders in Lieu of Meeting" in Country Estates, Meadowbrook, and Rochdale in which they referenced the Stock Pledge Agreement dated November 27, 1996, and stated the following:

> The undersigned, being all of the Stockholders of [Debtor Corporation], a Massachusetts corporation (the "Corporation"), and acting in accordance with the laws of the Commonwealth of Massachusetts, hereby consents to and adopts the following resolutions and direct that this action be filed with the records of the Corporation:
>
> RESOLVED: That each of the persons currently serving as a Director of the Corporation be and hereby is removed, effective of the date hereof.
>
> RESOLVED: That each of Richard Tuch and Douglas Noble be and hereby is elected to fill the vacancies created by the removal of the Directors effectuated by the foregoing resolu-

tion, each to serve until his successor is duly elected and qualified . . . .

In Meadowbrook, Larry Lentz, a shareholder and director, did not sign the "Action of the Stockholders in Lieu of Meeting," and did not receive notice of any stockholders meeting. In Forestview, only Commonwealth Communities Development LLC executed the "Action." Concomitantly, the new directors removed the existing officers of County Estates, Meadowbrook, Rochdale, and Forestview and elected Murray Sackman, President; Jeffrey Goldshine, Treasurer; and Douglas Noble Clerk of the corporations.

On September 10, 2001, the Nursing Homes filed Chapter 11 petitions. Platt signed the petitions as president. With their petitions, the Debtors filed a document captioned, "Unanimous Consent of Directors in Lieu of Meeting." The directors identified in the Table on page 2 of this decision signed those documents.

## III. DISCUSSION

The issue raised by the Motions to Dismiss is whether the Chapter 11 petitions filed by Platt were authorized by the Debtors' duly elected directors and officers. The Debtors argue that the purported exercise of Platt's voting rights by Commonwealth Communities Development LLC, as agent for Commonwealth Communities Development Co., Inc., to elect Douglas Noble and Richard Tuch as directors was void because it violated the automatic stay in effect in Platt's Chapter 11 case. Thus, the Debtors maintain that the petitions were duly authorized, and the Motions to Dismiss must be denied. Determination of the issue turns on whether the stock, which Platt pledged to Commonwealth Communities Development, Co., Inc., was property of his Chapter 11 estate and whether the exercise of the voting rights by Commonwealth Communities Develop-

ment Co., Inc. with respect that stock violated the automatic stay. The Court rules that the answer to both questions is yes.

At the time Platt filed his Chapter 11 petition, Commonwealth Communities Development Co., Inc. had not foreclosed upon its collateral pursuant to the requirements of the Uniform Commercial Code, and, thus, Platt retained the right to redeem his stock. *See* Mass.Gen.Laws Ann. ch. 106, § 9–506. Accordingly, Platt's stock in the Nursing Homes was property of his Chapter 11 estate, as "[t]he pledge did not make . . . [Commonwealth Communities Development Co., Inc.] . . . the owner of the stock; . . . [Platt] . . . remained the owner." *In re John Hicks Chrysler–Plymouth Inc.*, 152 B.R. 503, 507 (Bankr. E.D.Tenn.1992). Moreover, at the time the Stock Pledge Agreement was executed, none of the parties intended to make Commonwealth Communities Development Co., Inc. the owner of the pledged stock. *See* Stock Pledge Agreement at ¶ 3.2.

When Commonwealth Communities Development Co., Inc. exercised the right to vote the pledged stock, it did so at a time when the automatic stay was in effect in Platt's Chapter 11 case. The exercise of the voting rights was thus both "an act . . . to exercise control over property of the estate;" and an "act to . . . enforce . . . [a] . . . lien against property of the estate." 11 U.S.C. § 362(a)(3)–(4). There can be no doubt that by voting the pledged shares Commonwealth Communities Development Co., Inc. was attempting to wrest control of the Nursing Homes from Platt, as it voted to remove him as an officer and director. Also, there can be no doubt that it intended to enforce its lien for the purpose of collecting a debt. In doing so, it violated the automatic stay in Platt's case, and its actions were void. *See In re Soares*, 107 F.3d 969, 976 (1st Cir.1997).

A number of bankruptcy courts have addressed similar but not identical issues. *See, e.g., In re John Hicks Chrysler–Plymouth, Inc.,* 152 B.R. 503, 507 (Bankr. E.D.Tenn.1992); *In re Protho Express, Inc.,* 130. B.R. 517 (Bankr.M.D.Tenn.1991); *In re Consolidated Auto Recyclers, Inc.,* 123 B.R. 130, 138 (Bankr.D.Me.1991); *In re Windham Power Lifts, Inc.,* 91 B.R. 595 (Bankr.M.D.Ala.1988); *In re Hoffert Marine, Inc.,* 64 B.R. 409 (Bankr.M.D.Fla. 1986); *Hickory Point Indus., Inc. v. Hickory Holding Corp. (In re Hickory Point Indus., Inc.),* 50 B.R. 303 (Bankr.M.D.Fla. 1985); *In re Heidel House Enters., Inc.,* 40 B.R. 932 (Bankr.W.D.Wis.1984). The decision in *In re Marvel Entertainment Group, Inc.,* 209 B.R. 832 (D.Del.1997), however, is the most instructive for purposes of this decision. In that case, the district court reversed the bankruptcy court's holding that § 362(a)(3) prevented bondholders and an indenture trustee from voting pledged shares to replace the debtor's board of directors. Reciting a number of corporate governance principles, the district court observed that

> the automatic stay provisions of the Bankruptcy Code are not implicated by the exercise of shareholders' corporate governance rights. Indeed, if it were otherwise, there would be no need to determine whether shareholders' actions evidenced clear abuse. For instance, because the directors of a debtor-in-possession control and manage the debtors' operations, any election of a new board would be considered an attempt to exercise control over the assets of the estate and would thus be barred by § 362(a)(3).

209 B.R. at 838. The court rejected the debtors' argument that the bondholders were seeking to exercise rights accruing to them as creditors rather than as shareholders because the shares were pledged as security for the payment of the bonds issued by Marvel Holding Companies. The court observed:

> Appellants ... did not acquire shareholder rights in Marvel [the debtor] as creditors of Marvel, but rather as creditors of the Marvel Holding Companies. Because the pledged shares were property of the Marvel Holding Companies' estates, appellants were required to seek and, indeed, obtained relief from the automatic stay in the Marvel Holding Companies case that prevented them from exercising control over those shares. The fact that they acquired shareholder rights in Marvel by exercising creditor remedies in the Marvel Holding Companies case is of no moment.

*Id.* at 839. By analogy, Platt is in the position of Marvel Holding Companies and Commonwealth Communities Development Co., Inc. is in the position of the bondholders. Thus, it was required to obtain relief from the automatic stay in Platt's Chapter 11 case, prior to exercising its rights pursuant to the Stock Pledge Agreement.

## IV. CONCLUSION

The foregoing constitutes the Court's findings of fact and rulings of law in support of its decision announced on the record at the September 19, 2001 hearing denying the Motions to Dismiss.