In re Robert M. PLATT, Debtor.

Stewart F. Grossman, as Trustee of Robert M. Platt and as Trustee of the Nursing Homes Liquidating Trust, Plaintiff,

v.

Boston Red Sox Baseball Club Limited Partnership, Defendant.

Bankruptcy No. 01–16111–JNF.
Adversary No. 02–1483.

United States Bankruptcy Court,
D. Massachusetts.

Feb. 14, 2003.

Richard M. Gilbert, Adler, Pollock & Sheehan P.C., Boston, MA, David J. Reier, Seyfarth Shaw, Boston, MA, for plaintiff.

D. Ross Martin, Ropes & Gray, Boston, MA, for defendant.

## MEMORANDUM OF DECISION

JOEL B. ROSENTHAL, Bankruptcy Judge.

### I. INTRODUCTION

The matter came before the Court for trial in the above adversary proceeding in which Stewart F. Grossman (the "Trustee"), in his capacity as both Chapter 11 Trustee of the estate of Robert M. Platt and Trustee of the Nursing Homes Liquidating Trust, seeks, *inter alia*, a declaration and an injunction against the Boston Red Sox Baseball Club Limited Partner-

ship (the "Red Sox") so that the Trustee may sell four (4) season tickets to the Red Sox eighty-one (81) home games for the 2003 baseball season and all attendant rights, including the right to future renewals of the season tickets at a public auction. As part of the relief sought, the Trustee also seeks an injunction prohibiting the Red Sox from revoking or interfering with the season ticket rights of the successful bidder.

The parties' positions are straightforward. According to the Red Sox records the tickets are held in the name of "Platt Management"; the Trustee claims the tickets and their attendant rights as an asset of the Platt estate. The Red Sox argue that, even if the tickets and renewal rights were assets of Platt individually, the season tickets are not transferable and thus the Trustee cannot sell them. The Red Sox also assert that the season ticket license is an executory contract that the Trustee is deemed to have rejected by his failure to timely assume. The Red Sox further contend that the Massachusetts Anti-Scalping Statute prohibits the reselling of the season tickets. Finally the Red Sox have objected to the introduction of all evidence relating to the club's history of dealing with requests for transfers of season ticket accounts and the Court's taking judicial notice of any pleading tending to show the owner of the season ticket account at issue.

The Trustee responds that the Red Sox historical pattern of permitting transfers of other season tickets gives rise to a reasonable expectation of annual renewal of the tickets and thus created a property interest which he may sell pursuant to 11 U.S.C. § 363; that the right created is not derived from an executory contract; and that the Anti-Scalping Statute is simply inapplicable in these circumstances.

When he commenced this adversary proceeding, the Trustee also filed a "Motion for Preliminary Injunction Against Red Sox to Preserve Status Quo Pending Determination of Rights of Platt Estate in Red Sox Season Tickets." Although the Court (per Judge Feeney) denied the Trustee's Motion, the parties have agreed that the four (4) tickets at issue herein [1] will remain "on reserve" with the Red Sox pending the Court's decision.

## II. FACTS

Robert M. Platt ("Platt" or the "Debtor") filed a voluntary Chapter 11 petition on August 1, 2001. Approximately two months later, on September 28, 2001, the Court ordered the appointment of a Chapter 11 Trustee and on October 10, 2001, the Court approved the appointment of Stewart F. Grossman as the Chapter 11 Trustee. Between the Debtor's filing and the appointment of the Trustee, four corporations controlled by Platt filed voluntary Chapter 11 petitions.[2] Although both the Debtor's original Schedule B and his First Amended Schedule B did not list Red Sox season tickets as part of the Debtor's personal property, the Second Amended Schedule B, filed on April 16, 2002, added the following:

---

1. There were actually eight (8) Red Sox season tickets held in the name of Platt Management. Only four (4) of them are the subject of this Adversary Proceeding.

2. The corporate debtors are Country Estates Nursing Home, Inc.; Forestview Nursing Home of Wareham, Inc.; Meadowbrook Nursing Home, Inc.; and Rochdale Commons Nursing Home, Inc. (collectively, the "Nursing Homes"). The Nursing Homes' cases were jointly administered with *In re Country Estates Nursing Home, Inc.*, 268 B.R. 316 (Bankr.D.Mass.2001) designated as the lead case for docketing purposes.

| Type of Property | Current Market Value of Debtor's Interest |
|---|---|
| Renewal rights to purchase season tickets to Boston Red Sox home games. The Debtor asserts that whether the *renewal right* constitutes an asset of the estate is contingent upon the transferability of such right, and the Debtor specifically reserves his right to contest whether such renewal is an asset of the estate. | Uncertain |

The Chapter 11 Trustee, the Nursing Homes and three partnerships in which the Debtor had served as a general partner, together with Commonwealth Communities Management LLC ("Commonwealth"), filed a Joint Second Amended Plan of Reorganization (the "Plan") which the Court confirmed on September 27, 2002. The Plan contemplated the sale of the season tickets but provided that the proceeds of the sale would remain with the Platt estate.

On the Effective Date, the Nursing Homes Liquidating Trust shall loan to the Platt Estate from the Gross Payment a sum of money, up to a maximum loan of $600,000, sufficient to ensure that the holders of the Allowed Platt General Unsecured Claims receive a dividend payable on the Effective Date (or as soon thereafter as practicable) of ten percent (10%). To repay such loan, and in consideration for the subordination (on the Effective Date) of all Nursing Home, SHM, Freid, Tuch and Commonwealth Claims against the Platt Estate, as set forth more fully in this Section 6.12, *the Platt Estate shall transfer to the Nursing Homes Liquidation Trust all remaining assets,* including Avoidance Recoveries, of the Platt Estate— *other than* (i) the $600,000 paid in consideration for (among other things)

Platt's interest in Willow Glen, the Willow Glen Partnership and the SHM stock; (ii) *cash* (other than Avoidance Recoveries), *including proceeds from the sale of Platt's Celtics and Red Sox tickets (including rights thereto as a season ticket holder);* and (iii) Acquired Assets ("Remaining Assets"), together with the Net Proceeds recovered by the Platt Estate from any and all other causes of action.

Plan at ¶ 6.12 (emphasis supplied). The Red Sox were not served with either the Second Amended Schedule B or the Plan.

On or about October 30, 2002 the Red Sox sent Platt Management a Season Ticket Agreement consisting of an invoice and a Season Ticket Subscription Agreement. On November 4, 2002, the Trustee, in his capacity as Trustee of the Platt estate and as Trustee of the Nursing Homes Liquidating Trust, filed a "Motion of Chapter 11 Trustee to Sell Certain Season Tickets of (1) the Boston Red Sox and (2) the Boston Celtics and Any Rights and Privileges Associated Therewith Free and Clear of All Claims, Liens, Interest and Encumbrances by Public Auction." On November 8, 2002 the Red Sox purported to revoke the Season Ticket Agreement in a letter from the club's counsel to the Trustee. The Red Sox also filed an Objection to the Motion to Sell.

Subsequently the Trustee commenced the instant adversary proceeding by filing his "Verified Complaint to Enjoin the Red Sox from Disposing of Property of the Estate in Violation of the Automatic Stay and in Violation of the Estate's Contract Rights, Including Request for Sanctions, and to Determine Property Rights of Estate in Certain Season Tickets." The Trustee formulated four counts as follows: Count I (Violation of the Automatic Stay); Count II (Breach of Contract); Count III (Estoppel); and Count IV (Violation of

Chapter 93A). He also sought a preliminary injunction which was denied and the matter set for trial on the issue of liability only. In denying the motion for a preliminary injunction,[3] Judge Feeney noted that "[t]he entity, 'Platt Management' is not a debtor and the Trustee did not elucidate the relationship, if any, between the Debtor and Platt Management." Order of January 2, 2003 at p. 4, n. 1.

The trial took place on January 31, 2003. Two witnesses, Joseph Matthews, the Red Sox Season Ticket Manager, and Elaine Weddington Stewart, the Red Sox Vice President and Club Counsel, testified. At the conclusion of the trial, the Trustee waived Counts I and IV. Both parties submitted post-trial memoranda. In addition the Red Sox filed a "Motion Pursuant to FRE 201(e) For an Opportunity to be Heard as to the Propriety of Taking Judicial Notice and the Tenor of the Matter Noticed."

## III. DISCUSSION
### PROPERTY OF PLATT'S ESTATE AND JUDICIAL NOTICE

■ The Trustee sought permission to sell the season tickets pursuant to 11 U.S.C. § 363 which permits a trustee to sell "property of the estate." The Red Sox argue that the season tickets are not property of any estate under the Trustee's control. First, the season ticket account is held in the name "Platt Management" and second, the Plan has been confirmed and therefore no estate exists.

The Red Sox are correct that the account is held in the name of Platt Management, a fact clearly brought to the Trustee's attention by Judge Feeney's Order of January 2, 2003. The Trustee responds that the Court can and should take judicial notice of the Second Amended Schedule B

and the pleadings in the underlying case in general to prove that the Platt estate actually owns the tickets. The Red Sox argue, however, that, pursuant to Rule 201(b) of the Federal Rules of Evidence, the Court may not take judicial notice of the Debtor's petition and schedules, including Second Amended Schedule B.

■ FRE 201 governs judicial notice of adjudicative facts. FRE 201(b) does not prohibit this Court's taking judicial notice of the Debtor's petition and schedules; it prescribes the purpose for which they may be used.

> Judicial notice of [bankruptcy schedules] is taken for the limited purpose of establishing that which can be readily ascertained and cannot be denied—that the statements in them say what they say. The fact of the statements in the schedules themselves is capable of accurate and ready determination by resort to the original verified documents filed with the court..., the genuineness of which cannot reasonably be questioned. Fed.R.Evid. 201(b)(2). The actual truth of the facts asserted in the schedules, however, cannot readily be ascertained and is not appropriate for judicial notice.

*In re Stauffer*, 1994 WL 115914, *3 (Bankr.N.D.Ohio 1994).

Here there is no question that the Debtor amended Schedule B to list what he considered might be an asset, namely an unspecified number of Red Sox season tickets. The mere listing of the tickets on Second Amended Schedule B, however, does not mean that they (i) are the tickets at issue in this case or (ii) belong to the Debtor individually. Even if the Court were to take judicial notice of the *truth* of the information in Amended Schedule B,

---

**3.** Judge Feeney also ordered an evidentiary hearing on the Motion for Preliminary Injunction which was consolidated with the trial on the merits.

the failure to link the scheduled tickets to the account held in the name of Platt Management still exists. There is nothing to preclude Platt individually from holding season tickets in addition to whatever tickets are owned by Platt Management.

There is additional evidence beyond Amended Schedule B, however. The club's own records list Platt Management's address as 81 Deborah Road, Newton Center, MA. This is also the Debtor's home address. The Court finds that the Debtor's home address as set forth in several locations in various pleadings filed with this Court is a fact that can be readily ascertained and thus is the appropriate subject for judicial notice. That finding still does not create the link to Platt which the Trustee needs to prove. The same bankruptcy schedules which the Trustee argues are the proper subject for judicial notice indicate that Shelley Platt, the Debtor's spouse, also resides at the Deborah Road property. Moreover the Trustee, himself, commenced an adversary proceeding against Mrs. Platt and averred that her address was 81 Deborah Road. Thus one conclusion is that Mrs. Platt may be doing business as Platt Management; this is equally as plausible as assuming that Mr. Platt is "Platt Management." The Court is not at liberty to speculate or guess which conclusion is accurate, or whether, in fact, there are other equally reasonable conclusions. The Debtor's petition and schedules fail to list Platt Management as a "d/b/a/" or an entity in which he had an interest. This omission further undermines the inferences that the Trustee would have this Court make, namely that Platt and Platt Management are one and the same.

But for this failure of proof, the Court agrees with the Trustee that the season tickets are indeed property. Despite the Red Sox misplaced reliance on the non-transferability language contained in the Season Ticket Subscription Agreement and invoice, the practice of automatically renewing season tickets coupled with the pattern of arbitrarily and even capriciously permitting transfers creates a property right in the season ticket holder. The plain language cited by the Red Sox does not tell the whole story or even an accurate story of the Red Sox season ticket policy. There is a right to renew a Red Sox season ticket from year to year based upon the historical practices of the Red Sox and the reasonable expectations that behavior encourages. The account holder does not even need to solicit a renewal letter from the Red Sox; rather the Red Sox automatically send the renewal letters to the previous season ticket holders. The ticket holder need only sign his invoice and pay the amount owed, and although he may wait in eager anticipation that this year will be the year the Red Sox win the World Series and shed the "curse of the Bambino," he need do nothing else. This pattern gives rise to a reasonable expectation that season tickets are automatically renewable by their previous year's holders. In fact, Mr. Matthews testified that this year the Red Sox only purported to terminate the Platt Management season tickets.

Further the Red Sox do not consider it a violation of the alleged "no transfer" policy for season tickets holders to give away tickets, to sell the tickets at or, in isolated instances, above face value, or even for a business to give all of its tickets for a season to one customer of the business as a marketing tool. In fact the Red Sox canceled the season tickets of only two holders who had resold season tickets, one in 1998 and one in 2000. Mr. Matthews testified that one holder had been attempting to sell tickets for several games through e*bay or Tickets.com.

Mr. Matthews further testified that when season ticket holders called the Season Ticket Office to inquire about transferring their season tickets, they were read the non-transferability language quoted above. If a ticket holder refused to accept that response, he was told to write a letter requesting the transfer. Most of the written requests were granted.

According to Mr. Matthews the Red Sox permit transfer of season ticket rights in three (3) instances: (i) when the transfer is within a family; (ii) when a corporate account holder either has a corporate name change or merges with another company; and (iii) "special courtesies" approved by an executive above Mr. Matthews in the chain of command. Although there are weaknesses in the Red Sox position with respect to the first two categories,[4] the third is the exception that swallows the rule. Those are transfers that clearly fall outside of the first two exceptions and seem to depend upon management's whims.

 But misleading as the Red Sox public pronouncements of non-transferabil-

ity may be, the Court cannot permit a sale simply because a bankruptcy trustee could sell them if they were property of the estate[5] when this Trustee has failed to establish the crucial proof that Platt owns the Platt Management tickets.

## IV. CONCLUSION

For the foregoing reasons, the Court will order that judgment enter for the Defendant Red Sox on Counts II and III. The Motion for Preliminary Injunction Against Red Sox to Preserve Status Quo Pending Determination of Rights of Platt Estate in Red Sox Season Tickets is DENIED.

The Motion of Boston Red Sox Baseball Club Limited Partnership Pursuant To FRE 201(e) For Opportunity To Be Heard As To The Propriety Of Taking Judicial Notice And The Tenor Of The Matter Noticed is MOOT.

Separate orders will issue.

---

4. For example, Plaintiff's Exhibit 15 is a letter from Keith Moynihan, the Accounting Manager of Anitec, a division of International Paper. In his letter Mr. Moynihan stated that International Paper purchased the assets of Cookson Graphics, the season ticket holder. Specifically Mr. Moynihan wrote "I realize that the Red Sox tickets are non-transferable, but feel that they were acquired as part of all of the other assets of the previous company and not transferred." The transfer was approved.

When ruling upon intrafamily transfers or corporate mergers or name changes, the Red Sox do not take any steps to investigate the veracity of a ticket holder's claim that the transfer is to a family member or that a company has undergone a name change or merger or that the transferor has made a profit in connection with the transfer. When dealing with "special courtesies" there is no need to investigate because there are no rules governing what the Red Sox will deem transferable.

5. The Court rejects the argument that the season ticket agreement constitutes an executory contract which the Trustee failed to assume. *See I.D. Craig Service*, 138 B.R. 490, 501–02 (Bankr.W.D.Pa.1992). Similarly the Massachusetts Anti–Scalping Statute, Mass. Gen. Laws Ann. ch. 140, § 185A (1924), does not apply as the Trustee is not "engaged in the business of reselling tickets" within the meaning of the statute. *See Lainer v. City of Boston*, 95 F.Supp.2d 17, 19 (D.Mass.2000); *Commonwealth v. Sovrensky*, 269 Mass. 460, 169 N.E. 418 (1929) *Commonwealth v. White*, 260 Mass. 300, 157 N.E. 597 (1927); *Goodowsky v. Rubenstein*, 225 Mass. 448, 451, 114 N.E. 683 (1917). *See also Supreme Malt Products Co. v. United States*, 153 F.2d 5, 6 (1st Cir.1946). Finally the Plan is replete with references to the "Platt Estate" sufficient for the Court to have found that it continued post-confirmation.