In re NEWPORT CREAMERY, INC., Debtor.

GE Capital Franchise Finance Corporation, Appellant,

v.

Andrew S. Richardson, Chapter 7 Trustee, Appellee.

GE Capital Franchise Finance Corporation, Appellant,

v.

Andrew S. Richardson, Chapter 7 Trustee, Robert E. Swain, Rocomi Enterprises L.L.C., Newport Creamery, L.P., Newberg, L.P., Newhart, L.P., Tarpon Highlands Development Corporation, and Linda D. Swain, Appellees.

BAP Nos. RI 02–037, RI 02–038, RI 02–070, RI 02–082, RI 02–091. Bankruptcy No. 01–13196. Adversary Nos. 01–1118, 02–1027.

United States Bankruptcy Appellate Panel of the First Circuit.

July 16, 2003.

Jeffrey T. Wegner, Michael J. Mills, Kutak Rock, LLP, Omaha, NE, John H. Bernstein, Kutak Rock, LLP, Denver, CO, Peter J. Furness, Nixon Peabody, LLP, Providence, RI, on brief for Appellant.

Alden C. Harrington, Boyajian, Harrington & Richardson, Providence, RI, on brief for Appellee.

Before KENNER, HILLMAN & ROSENTHAL, U.S. Bankruptcy Appellate Panel Judges.

## *INTRODUCTION*

ROSENTHAL, Bankruptcy Judge.

Pending before the United States Bankruptcy Appellate Panel for the First Circuit (the "Panel") are five appeals by GE Capital Franchise Finance Corporation ("GE Capital") from orders entered by the United States Bankruptcy Court for the District of Rhode Island (the "Bankruptcy Court"). GE Capital allegedly holds a first mortgage interest in certain property, including five parcels of real estate (the "Properties") which are the subject of these appeals. The five appeals involve an ongoing dispute between GE Capital and appellee, Andrew S. Richardson, the Chapter 7 Trustee of Newport Creamery, Inc.

(the "Trustee"), regarding the administration, management, and, ultimately, the sale of the Properties. The appeals are as follows:

1. BAP No. RI 02–037 is an appeal from an Order Denying Motion to Require Compliance with 11 U.S.C. § 365(d)(4) and For Payment of Rent Pursuant to 11 U.S.C. § 365(d)(3);

2. BAP No. RI 02–038 is an appeal from an Order Granting the Trustee's Application to Employ Real Estate Broker to Market the Properties;

3. BAP No. RI 02–070 is an appeal from an Order Granting the Trustee's Motion to Enter into Month–to–Month Rental Agreements with respect to the Properties;

4. BAP No. RI 02–082 is an appeal from the Bankruptcy Court's Order Granting Trustee's Application to Compromise in Adversary Proceedings 01–1118 and 01–1120; and

5. BAP No. RI 02–091 is an appeal from the Bankruptcy Court's order authorizing the Trustee to sell the Properties.

By the Panel's order dated August 20, 2002, the first two appeals (BAP Nos. 02–037 and 02–038) were consolidated for briefing and oral argument. Subsequently, on February 7, 2003, the Panel entered an order consolidating all five appeals for oral argument.

The underlying issue in the first three appeals (BAP Nos. 02–037, 038 and 070) is the authority of the Trustee to administer and manage properties which, at the time the orders were entered, were titled to an entity other than Newport Creamery, Inc. (the "Debtor"), but which were the subject of a fraudulent conveyance action. After the entry of the first three orders, the

Trustee settled the fraudulent conveyance action against Newport Creamery, L.P., the titled owner of the properties. The Order Approving the Application to Compromise was entered on October 25, 2002, and required Newport Creamery, L.P. to transfer the Properties to the Trustee. GE Capital appealed from that order but did not seek a stay pending appeal (BAP No. 02–082). Accordingly, the Properties were conveyed to the Trustee at which point legal title vested in the Estate. Once legal title vested in the Estate, the Bankruptcy Court approved the sale of the Properties pursuant to 11 U.S.C. § 363. GE Capital has appealed from the order authorizing the sale (BAP No. 02–091), however, GE Capital did not seek to stay the sale pending appeal. Pursuant to the terms of the sale order, the proceeds of the sale are being held in escrow pending a determination of the fraudulent conveyance claims by the Bankruptcy Court.

A fraudulent conveyance action, which the Trustee filed on April 10, 2002 against GE Capital, is currently pending in the Bankruptcy Court.

### STATEMENT OF FACTS

#### A. Factual Background.

The Debtor, Newport Creamery, Inc., operated 34 family-style restaurants specializing in ice cream and frozen desserts. In March of 1999, GE Capital's predecessor-in-interest (collectively, "GE Capital") financed a leveraged buyout of the Debtor by Robert Swain, the President of the Debtor. Mr. Swain and his wife, Linda Swain, were the owners of Rocomi Enterprises, LLC ("Rocomi"), the entity which held 100% of the Debtor's stock. GE Capital and Mr. Swain structured the transaction by transferring six parcels[1] of real estate owned by the Debtor to a new entity formed by Mr. Swain called Newport Creamery, L.P. ("NCLP").[2] NCLP borrowed approximately $4.5 million from GE Capital secured by mortgages on the real estate in order to partially finance Mr. Swain's buyout of the former shareholders of the Debtor. In addition to the mortgages, GE Capital received an assignment of rents and leases from NCLP for the six parcels of property. All six parcels were leased back to the Debtor as part of the financing arrangement.[3]

#### B. Bankruptcy Proceedings.

In June, 2001, the Debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code[4] in the United States Bankruptcy Court in Tampa, Florida. In August, 2001, on the motion of certain creditors, the case was transferred to the United States Bankruptcy Court for

---

1. At one restaurant location, the Debtor had refinanced the property and paid GE Capital prior to the bankruptcy filing. The same location was sold after the Trustee's appointment and the proceeds of the sale (subject to an attorney's lien) were transferred to the Trustee as part of the compromise between the parties. Therefore, these appeals involve only five of the six parcels of real estate which were originally transferred as part of the leveraged buyout.

2. The creation of NCLP as a "bankruptcy remote vehicle" was a condition of the GE Capital loans.

3. As more specifically set forth below, in a September 21, 2001 order granting a preliminary injunction against Mr. Swain, NCLP, and other defendants, the Bankruptcy Court found that the Debtor paid significantly higher rent per square foot for the five stores leased to the Debtor by NCLP than for stores leased to the Debtor by unrelated lessors. *See* Appellant's App. in BAP No. 02–070 at Tab 22, p. 94.

4. All references to the "Bankruptcy Code" or the "Code" are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101, *et seq.*

the District of Rhode Island where the Debtor's company offices and most of its operating restaurants were located. In September, 2001, on motion of the United States Trustee, the case was converted to one under Chapter 7 of the Code, and Andrew S. Richardson was duly appointed Chapter 7 Trustee.

On September 14, 2001, three days after his appointment, the Trustee filed an adversary proceeding against a number of insider defendants including Mr. Swain, Rocomi, and NCLP, alleging, *inter alia,* that the Debtor had fraudulently transferred the Properties to NCLP, and seeking to compel NCLP to return the Properties to the Estate (Adv.Pro. No. 01–1118). The Trustee brought a separate action against Linda Swain (Adv.Pro. No. 01–1120).

Also on September 14, 2001, the Trustee filed an Emergency Motion For Administrative Orders, seeking the return of the Properties and other personal property held by NCLP to the Debtor, and a temporary restraining order preventing any transfers of the Properties. After a hearing, the Bankruptcy Court entered the temporary restraining order against NCLP and the other defendants. After further hearing, on September 21, 2001, the Bankruptcy Court entered an order granting the Trustee's request for a pre-

liminary injunction against NCLP and the other defendants enjoining any further transfers or encumbrances of the Properties (the "September 21, 2001 order"). The September 21, 2001 order also authorized the Trustee to market the Properties for sale with other assets of the Debtor.[5] NCLP filed a Notice of Appeal from the September 21, 2001 order with a Motion for Leave to Appeal.[6] After a hearing on March 19, 2002, the United States District Court for the District of Rhode Island denied the Motion for Leave to Appeal, finding that the issues were interlocutory.[7] *See* Appellee's App. at Tab D, p. 20. GE Capital, the mortgagee, was not a party to these proceedings and never sought to intervene to assert any rights as the alleged assignee or mortgagee of NCLP.

In the fall of 2001, the Trustee marketed for sale all of the Debtor's assets, including the Properties. A private sale of all of the assets could not be arranged, and in late December of 2001, the name, trademarks, and certain personal property of the Debtor were sold at auction. The purchaser, Jan Co., took over the operation of the remaining Newport Creamery restaurants, including those at the Properties.

In early February of 2002, NCLP filed complaints in Rhode Island Superior Court seeking to evict Jan Co. from the Properties. On February 15, 2002, on motion of

5. The Order provided, in pertinent part, as follows:

Additionally, based on the evidence, the Trustee's request for emergency relief is granted in part, i.e. the Trustee is authorized to market and offer for sale the assets of Newport Creamery, L.P. and all assets transferred to Newport Creamery Food Services after April, 2001, as a package sale of assets within the Debtor's estate.

*See* Appellant's App. in BAP No. 02–037 at Tab 22, p. 96.

6. NCLP elected to take its appeal to the district court.

7. At hearing, the district court also stated as follows:

Well, there's a misnomer here. It wasn't a preliminary injunction that [the bankruptcy judge] issued. He issued an injunction pendente lite. Pending the outcome of the litigation, the parties are enjoined, the status quo was held until a determination is made. The ultimate relief here is not a permanent injunction. The ultimate relief is something else, and therefore, it's an injunction pendente lite. That's what he granted.

*See* Appellee's App. at Tab C, p. 11.

the Trustee, the Bankruptcy Court entered an order enjoining NCLP from proceeding with the state court evictions and authorizing the Trustee to negotiate lease agreements for the Properties, subject to further review of the Bankruptcy Court. Pursuant to the February 15, 2002 order, all proceeds from the lease of the Properties were to be held in escrow by the Trustee pending a final determination on the merits of the Trustee's fraudulent transfer claim against NCLP. *See* Appellee's App. at Tab B, pp. 6–7. The order also denied GE Capital's oral motion for a stay pending appeal. NCLP filed a Notice of Appeal from the February 15, 2002 order and a Motion for Stay Pending Appeal.[8] The Trustee filed a Motion to Dismiss the Appeal, which the district court granted by order dated July 11, 2002, stating that the February 15, 2002 order was interlocutory. *See* Appellee's App. at Tab G, p. 47.

On March 25, 2002, GE Capital filed a motion to require the Trustee to comply with § 365(d)(4) by immediately surrendering the Properties and for the immediate payment of rent to GE Capital pursuant to § 365(d)(3). GE Capital's claim was based upon an asserted assignment of rents and leases from NCLP, the lessor. The Trustee objected, arguing that GE Capital never exercised its right to assume the leases under the mortgages and therefore, GE Capital was only a secured creditor, and was not, as it claimed, the lessor of the Properties. The Trustee also objected on the grounds of collateral estoppel, waiver and standing, arguing that there was no basis to require payment of rent to a secured party pursuant to § 365 or to assume a lease when the Trustee

claimed that he was the rightful owner of the fraudulently transferred property. The Bankruptcy Court denied GE Capital's motion, which is the subject of BAP No. RI 02–037. The Bankruptcy Court also denied GE Capital's motion for stay pending appeal.

On April 10, 2002, the Trustee filed a Motion to Enter Month to Month Rental Agreements (the "Rental Agreement Motion"), seeking approval of agreements the Trustee had negotiated to lease the Properties to Jan Co.[9] GE Capital filed an objection and a hearing was held on the motions in late May, 2002. The Bankruptcy Court entered its order and judgment denying the GE Capital motion on July 8, 2002, and on August 26, 2002, approved the Rental Agreement Motion. GE Capital appealed the Bankruptcy Court's approval of the Rental Agreement Motion, which is the subject of BAP No. RI 02–070.

Also on April 10, 2002, the Trustee initiated an adversary proceeding against GE Capital, alleging, *inter alia,* that GE Capital's mortgages and assignments of rents and leases, which were part of the leveraged buyout in March 1999, were voidable as fraudulent transfers. This is Adversary Proceeding No. 02–1027 and is currently pending in the Bankruptcy Court.

On April 12, 2002, the Trustee filed an Application to Employ Real Estate Broker, seeking to retain Peter M. Scotti & Associates to market the Properties as provided in the September 21, 2001 order. Without making any findings as to the authority of the Trustee to sell the Properties, the Bankruptcy Court entered an or-

---

**8.** Once again, NCLP elected to take its appeal to the district court.

**9.** Under the terms of the rental agreements, the Trustee agreed to collect rent from Jan

Co. and hold the rent in escrow pending a determination as to which party is entitled to receive them.

der on July 8, 2002 allowing the Trustee to retain a real estate broker to market the Properties for sale.[10] The granting of this motion is the subject of BAP No. RI 02–038. GE Capital sought a stay pending appeal from the Bankruptcy Court, which was denied on July 8, 2002. GE Capital also sought a stay pending appeal from the Panel, which was denied by order dated October 8, 2002.

### C. Subsequent Bankruptcy Proceedings.

In the fall of 2002, the Trustee, Mr. Swain, NCLP and the other defendants in Adv. Pro. No. 01–1118 and 01–1120 (against Linda Swain) entered into an agreement settling all aspects of those adversary proceedings. As part of the settlement, NCLP agreed to immediately transfer the Properties to the Trustee free and clear of liens, except liens and encumbrances of record, such as the GE Capital mortgages and assignments, and the Trustee agreed to release certain claims against NCLP. GE Capital objected to the settlement, arguing that NCLP was without authority to transfer the Properties without the consent of GE Capital because such a transfer would violate the terms of the mortgages and NCLP's organizational documents. On October 17, 2002, the Bankruptcy Court held a hearing on the settlement agreement. On October 25, 2002, the Bankruptcy Court overruled GE Capital's objection and approved the settlement. *See* Order Granting Application to Compromise, Appellee's App. at Tab I. In overruling GE Capital's objections, the Bankruptcy Court specifically noted that the proceeds of any sales of the Properties would be protected pending the outcome of litigation with the secured lender. GE Capital timely appealed the October 25, 2002 order, which has been assigned BAP No. RI 02–082. GE Capital's motion for a stay pending appeal was denied by the Bankruptcy Court, and GE Capital did not request a stay pending appeal from the Panel. Pursuant to the terms of the October 25, 2002 order, legal title to the Properties was transferred to the Trustee on November 19, 2002, and thus the Properties became part of the Estate.[11]

Thereafter, as approved by the Bankruptcy Court's earlier order, the broker, Mr. Scotti, marketed the Properties and the Trustee received a number of offers. On September 20, 2002, the Trustee filed his Notice of Intended Sale of the Properties pursuant to § 363. GE Capital objected to the sale. The Trustee conducted an auction on November 21, 2002 and the successful bids on the properties totaled

10. The Order provides:
 Peter M. Scotti is authorized to assist the Trustee in the marketing and the solicitation of offers for the purchase of real estate currently titled to Newport Creamery, L.P. located in Middletown, Rhode Island; Providence, Rhode Island; Coventry, Rhode Island; Greenville, Rhode Island; and Seekonk, Massachusetts, which property is the subject of a fraudulent conveyance action brought by the Trustee styled Richardson, Trustee of Newport Creamery, Inc. vs. Newport Creamery, L.P. et al., A.P. No. 01–1118 currently pending in this Court.
 *See* Appellant's App. in BAP No. 02–037 at Tab 14, p. 62.

11. The Trustee moved to dismiss the pending appeals (02–037 and 02–038) on the basis that the Bankruptcy Court's approval of the compromise which is the subject of appeal 02–082 was a substantial change in circumstances. In his motion, the Trustee argued that the Properties became property of the Estate upon their conveyance to the Trustee, thereby rendering the appeals moot. The Panel denied the motion by order dated November 22, 2002, stating that the appeals are not moot since the order approving compromise, by which the transfers took place, could be reversed on appeal, and the transfer avoided or other relief afforded to GE Capital. *See* Appellee's App. at Tab J.

$4,325,000.[12] Despite GE Capital's continued objection to the sale, the Bankruptcy Court entered an Order Approving Sales on December 11, 2002. Pursuant to the Bankruptcy Court's order approving the sale, the proceeds of the sale are being held in escrow pending a determination of the fraudulent conveyance claims against GE Capital by the Bankruptcy Court. GE Capital has appealed from the order authorizing the Trustee to sell the Properties. This is the subject of BAP No. RI 02–091. A motion for stay pending appeal was denied by the Bankruptcy Court. No motion for stay pending appeal was filed with the Panel.

### APPELLATE JURISDICTION

■ As a preliminary matter, this Panel is duty-bound to determine its jurisdiction over this appeal before proceeding to the merits. *See Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998).

■ The bankruptcy appellate panel has jurisdiction to hear appeals from "final judgments, orders, and decrees" pursuant to 28 U.S.C. § 158(a)(1) or, "with leave of the court, from interlocutory orders and decrees" pursuant to 28 U.S.C. § 158(a)(3).

*Id.* "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment,'" *Fleet Data Processing Corp.*, 218 B.R. at 646, while an interlocutory order "'only decides some intervening matter pertaining to the cause, and ... requires further steps to be taken in order to enable the court to adjudicate the cause on the merits.'" *Id.* (quoting *In re American Colonial Broad. Corp.*, 758 F.2d 794, 801 (1st Cir.1985)).

■ "Finality is viewed more flexibly in the bankruptcy context than it is in other civil litigation contexts." *American Colonial Broadcasting Corp.*, 758 F.2d at 801. "A bankruptcy order need not dispose of all aspects of a case in order to be final; an order which disposes of a 'discrete dispute within the larger case' will be considered final and appealable." *Id.* (citing *In re Saco Local Dev. Corp.*, 711 F.2d 441, 444 (1st Cir.1983)). "The order in question must, however, 'conclusively determine' the dispute." *Id.* "A final judgment is one which disposes of the whole subject, gives all the relief that was contemplated, provides with reasonable completeness, for giving effect to the judgment and leaves nothing to be done in the cause

---

**12.** The Trustee's original Notice of Intended Sale listed the sale price of the Properties at $3,000,000. *See* Appellant's App. in BAP No. 02–091 at Tab 16, p. 78–79. In GE Capital's memorandum in support of its objection to the sale, it argued that the Trustee had not established one or more of the conditions set forth in § 363(f), alleging, *inter alia*, that the amount received was "far less than the amounts due and owing" to GE Capital. Appellant's App. in BAP No. 02–091 at Tab 21, p. 164. It is not clear from the record whether the amount ultimately received at auction ($4,325,000) was greater than GE Capital's claim, thereby bringing the sale within the scope of § 363(f)(3). At the hearing on the Notice of Sale, following the auction of the Properties, the Trustee argued that

§ 363(f)(4) allowed the sale, but did not raise § 363(f)(3). GE Capital did not press the "for less than owing" argument that it had raised in its memorandum. See footnote 16, *infra.* If GE Capital believed that it was inappropriate for the Bankruptcy Court to approve the sale of the Properties because their interest was in jeopardy, then the hearing on the Notice of Sale would have been the appropriate time to renew its objection. Given the difference between the amount originally listed in the Trustee's Notice of Intended Sale and the value actually received at auction, this Panel believes that GE Capital waived the "for less than owing" argument by not raising it at the hearing. Therefore, it cannot be raised on appeal.

save superintend, ministerially, the execution of the decree." *Id.* (citing *City of Louisa v. Levi,* 140 F.2d 512, 514 (6th Cir.1944)).

 It is necessary to examine the relief requested by GE Capital to properly determine whether the dispute raised by GE Capital has been "conclusively determined." Such a fact specific inquiry into the details of this particular case is appropriate given the unique nature of bankruptcy cases and the pragmatic approach reviewing courts must take when determining whether an issue is final. *See In re Marvel Entertainment Group, Inc.,* 209 B.R. 832, 835 (D.Del.1997) (citing *Commerce Bank v. Mountain View Village, Inc.,* 5 F.3d 34, 36–37 (3d Cir.1993)).

GE Capital did not suggest possible remedies in the multiple briefs it submitted to the Panel in preparation for oral argument. During oral argument before the Panel, GE Capital was asked about possible remedies three times. In response, GE Capital made two suggestions: (1) a damages claim against either the Estate or the Trustee stemming from improper compensation being paid to the real estate broker or from fair market value not being received from the sale of the Properties; or (2) an order or decision saying that the sale was handled improperly because the Bankruptcy Court judge brought the five subject properties into the property of the Estate prematurely. Furthermore, GE Capital specifically agreed at hearing that it did not seek to undo the sale of the Properties.[13]

 As to GE Capital, the dispute that needs to be conclusively determined before being considered final is the allowance or disallowance, and the nature of, its claim. Until there is a resolution of the Trustee's fraudulent conveyance action against GE Capital, *Richardson, Trustee vs. GE Capital, et al,* A.P. 02–1027, such a determination will be impossible. In the meantime, in both the Order Granting Application to Compromise and the Order Approving Sales, the Bankruptcy Court preserved all rights of GE Capital by ordering that any liens on the Properties attach to the proceeds of the sale.

If, in the fraudulent conveyance action, the Trustee is able to successfully avoid GE Capital's alleged lien, then all the issues raised here by GE Capital would be moot. Alternatively, if GE Capital is successful, then it will be entitled to be paid from the proceeds of the sale. If there are insufficient funds to pay GE Capital, then it may have an action against the Trustee at that time. Under either circumstance, GE Capital's appeals with respect to the sale are interlocutory.

 Even if the appeals were not interlocutory in nature or the Panel were to exercise its discretion to grant leave to appeal under 1st Cir. BAP R. 8003–1(a), the Panel would dismiss the appeals for the reason that, with respect to all but one matter, no remedy can be fashioned in this case.[14]

---

13. *See* footnote 16, *infra.*

14. The sole matter on which a remedy could be fashioned is GE Capital's appeal from the order denying its motion for payment of rent pursuant 11 U.S.C. § 365(d)(3). That motion requests money damages. The order denying that motion is interlocutory, however, because GE Capital's interest in rents is part of its alleged security claim. If, ultimately, GE Capital prevails in the fraudulent conveyance action, it will receive payment of its secured claim; if it loses it will be entitled to no payment. Furthermore, BAP No. RI 02–038, GE Capital's appeal from an Order Granting the Trustee's Application to Employ Real Estate Broker to Market the Properties (the "Broker Order"), is not appealable for the reason that it did not affect GE Capital's rights. It did not authorize the sale of the

It is well established that where a reviewing court cannot provide a remedy, an appeal is moot. *Mills v. Green*, 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed. 293 (1895); *Anheuser–Busch, Inc. v. Miller (In re Stadium Mgmt. Corp.)*, 895 F.2d 845, 847–48 (1st Cir.1990). The equitable rationale underlying this doctrine is that finality of bankruptcy court judgments furthers the Bankruptcy Code policy of facilitating reorganization. *Rochman v. Northeast Utils. Serv. Group (In re Public Service Co. of New Hampshire)*, 963 F.2d 469, 471–72 (1st Cir.), *cert. denied*, 506 U.S. 908, 113 S.Ct. 304, 121 L.Ed.2d 226 (1992). Thus, even if a reviewing court disagrees with the decision or rationale of a bankruptcy court, it *must* dismiss the case as moot if no remedy can be fashioned. *Stadium Mgmt. Corp.*, 895 F.2d at 847 (emphasis added).

The Trustee did not raise the issue of mootness in any of the briefs submitted to the Panel although he did briefly address the issue in his oral argument before the Panel. Regardless, because mootness is a threshold jurisdictional issue, the Panel may raise it *sua sponte*. *See Allende v. Shultz*, 845 F.2d 1111, 1115 n. 7 (1st Cir. 1988).

As discussed, *supra*, GE Capital did not suggest possible remedies in the multiple briefs it submitted to the Panel in preparation for oral argument and during oral argument suggested that the court either enter (1) an order for damages against either the Estate or the Trustee stemming from improper compensation being paid to the real estate broker or from fair market value not being received from the sale of the Properties; or (2) an order or decision saying that the sale was handled improperly because the Bankruptcy Court judge brought the five subject properties into the property of the Estate prematurely. We address these in turn.

As to GE Capital's first suggestion that it may have a damages claim against either the Estate or the Trustee for the improper sale of the five subject properties or the improper employment of the real estate broker, there is no complaint for damages pending before the Bankruptcy Court or this Panel, and therefore this is not an appropriate remedy. Furthermore, if GE Capital believes that the real estate broker's compensation is improper or excessive, then the proper way of raising that issue is to object to the real estate broker's application for compensation.[15]

As to a claim for damages resulting from the Trustee's receiving less than fair market value for the sale of the Properties, GE Capital waived its right to object to

real estate, but merely authorized the Trustee's retention of a qualified real estate broker to market the properties. Indeed, the Trustee's authority to market the Properties was already established in the Bankruptcy Court's September 21, 2001 order, and the Broker Order did nothing more than establish Mr. Scotti as a qualified broker and authorize his retention.

**15.** Although GE Capital objected to the application to employ the real estate broker, appeal of which is the subject of BAP No. RI 02–038, GE Capital did not object to the amount of compensation to be provided to the real estate broker for sale of the Properties. The Panel notes that the order granting the Trustee's application to employ the real estate broker provided that "fees, commissions, and compensation" to be paid to the real estate broker would be "determined by the Court upon application and the rights of interested parties to be heard." Appellant's App. in BAP No. 02–037 at Tab 14, p. 62. Even though a percentage rate of compensation was not specified in the order authorizing employment, however, in the Panel's experience, the prudent course for a party objecting to an application for compensation is to have also objected to the application for employment.

the sale price when it did not press the issue during the sale hearing.[16] *See LaRoche v. Amoskeag Bank (In re LaRoche),* 969 F.2d 1299, 1305 (1st Cir.1992) (arguments not raised in bankruptcy court cannot be raised for first time on appeal); *Capitol Bank & Trust Co. v. 604 Columbus Ave. Realty Trust (In re 604 Columbus Ave. Realty Trust),* 968 F.2d 1332, 1343 (1st Cir.1992) (same).

GE Capital's other suggested remedy is for the Panel to issue an order or decision stating that the sale was handled improperly by the Bankruptcy Court. A judicial determination is only appropriate, however, if it would have a practical effect on the dispute between the parties. *See Bank of Boston v. Wallace,* 218 B.R. 654, 656–56 (D.Mass.1998) (citing *McLean Square Assocs. v. J.W. Fortune, Inc. (In re McLean Square Assocs., G.P.),* 200 B.R. 128, 131 (E.D.Va.1996)). If GE Capital were seeking to undo the sale, then there might be some nexus between the requested order and a remedy. At the oral argument before this Panel, however, GE Capital, which failed to obtain a stay of the sale, conceded that the sale was valid under § 363(m) and that it did not seek to undo the sale.[17] Accordingly, a decision or order of the type requested by GE Capital would have no effect on the existing controversy and thus is not an appropriate remedy. Therefore, even if this Panel had determined those appeals were final or were to have exercised its discretion to permit the interlocutory appeal to proceed, all five of GE Capital's appeals would be dismissed as moot for the reason that this Panel cannot grant effective relief.

---

**16.** The following exchange occurred during the Hearing on the Motion to Sell the Properties:

> MR. RICHARDSON: ...[T]he objection raises three points: Point Number One is that the estate doesn't own the property, that's factually incorrect. As a result of the compromise of the adversary proceeding as Newport Creamery, LP, the estate does have ownership of all the Properties now. The second part of the objection suggests that it's not authorized under 363, it suggests that none of the criteria of 363(f) which allows the sale free and clear to be made or met. Despite the fact that 363(f)(4) specifically provides that the trustee can sell free and clear their interests if their interests were in bona fide dispute. I think the Court can take judicial notice of the adversary proceeding that's pending before this Court with respect to the mortgage which has been challenged by the trustee and I believe that that case provides sufficient grounds for this Court to determine that the security interests are in bona fide dispute. The third part of their objection indicates that the trustee has failed to demonstrate that he has adequately advertised the market of the property. If necessary, Judge, I'm prepared to call Mr. Scotti to the stand to form a record as to what efforts were made with respect to this property.
> THE COURT: Are you pressing that part of your objection?
> MR. MILLS (for GE Capital): No, Your Honor.
> THE COURT: Okay.
> MR RICHARDSON: Okay, then we won't call Mr. Scotti. Then in light of the above, Your Honor, I'd ask that the Court affirm the auction sale as set forth, and I'll present orders in accordance therewith.
> MR MILLS: Your Honor, I would only ask for a ruling on our request for judicial notice of the exhibits previously offered in this proceeding.
> THE COURT: That request is granted and judicial notice is taken.
> MR MILLS: Thank you Your Honor.

*See* Appellant's App. in BAP No. 02–091 at Tab 40, p. 580–81.

**17.** GE Capital stated the following at oral argument before this Panel: "... I think this Court can craft an order or a decision that says... (1) ... this was handled improperly. We're not going to upset the sale. The sale is valid under 363(m), ... but the way they got to the sale was wrong, and ... this is not the ... manner in which these cases, these types of cases ought to be handled."

## CONCLUSION

For the reasons stated herein, the Panel finds that all five of the appeals brought by GE Capital (BAP No. RI 02–037, BAP No. RI 02–038, BAP No. RI 02–070, BAP No. RI 02–082 and BAP No. RI 02–091) are premature and should be DISMISSED as interlocutory.

## JUDGMENT

This cause came to be heard from the United States Bankruptcy Court for the District of Rhode Island.

Upon consideration whereof, and in accordance with the Opinion entered on July 16, 2003, the Panel finds that all five of the appeals brought by GE Capital Franchise Finance Corporation (BAP No. RI 02–037, BAP No. RI 02–038, BAP No. RI 02–070, BAP No. RI 02–082 and BAP No. RI 02–091) are premature and, it is now hereby **ORDERED AND ADJUDGED** that all five of the appeals are **DISMISSED** as interlocutory.